Argued and submitted May 3, reversed and remanded December 6, 2000

In the Matter of the Compensation of
Fredric B. Simmons, Claimant.

Fredric B. SIMMONS,
*Petitioner,*

*v.*

LANE MASS TRANSIT DISTRICT
and SAIF Corporation,
*Respondents.*

(98-02846, 97-04490; CA A106416)

15 P3d 568

Dale C. Johnson argued the cause and filed the brief for petitioner.

James W. Moller argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Linder and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Claimant seeks review of an order in which the Workers' Compensation Board[1] refused to set aside a "Stipulation and Order" by which he and SAIF had resolved his request for a hearing on SAIF's denial of his claim that his current condition is a new injury. Under the stipulation, SAIF agreed to continue treating his current condition as an aggravation of a previous accepted injury. Claimant argues that the stipulation is invalid both because the law requires the parties to resolve a denied claim by a Disputed Claims Settlement (DCS) rather than a simple stipulation and because there was no consideration for the agreement. We agree with the first ground and therefore reverse without reaching the second.

Claimant is a bus driver who works for respondent Lane Mass Transit District. He began suffering leg cramps in July 1995 after a shift in which he worked for 16 hours without interruption. The cramps eventually went away after he undertook treatment from a physician and a rearranged work schedule that the physician suggested. SAIF initially denied his claim for the leg cramps, and claimant sought a hearing on the denial. In April 1996, after claimant became medically stationary, SAIF agreed to accept his claim as one for "left leg cramp, now resolved." That agreement was reflected in a stipulation and order that an ALJ approved; it left open all unresolved issues concerning the compensation to which claimant was entitled for the injury.

Claimant again experienced left leg cramps in October 1996, after working five consecutive 12-hour shifts. His physician treated the condition in large part by adjusting claimant's work schedule to limit the number of consecutive 12-hour shifts that claimant was working at the time. A notice of claim for a new injury was filed on October 7, and an aggravation claim in the original injury case was filed on November 15. At that time, a number of issues about claimant's right to time loss from the original claim remained unresolved.

---

[1] Because the Board adopted the opinion and order of the administrative law judge, we refer to the ALJ's opinion and order as that of the Board.

In January 1997, SAIF denied the claim for a new injury. However, SAIF stated in the letter of denial that it would pay claimant's medical bills under the original claim as an aggravation. Claimant sought a hearing on the denial of the new injury claim, and that hearing was consolidated with the hearing on the unresolved issues from the original claim. In May 1997, claimant's attorney reached a settlement of the new injury claim with SAIF. Under that settlement, the new injury claim remained denied but SAIF agreed to process all issues as an aggravation of the original injury. In addition, SAIF agreed to remove the word "resolved" from its acceptance of the original claim. The statement of the issues that the stipulation resolved was limited to those "raised" at the time of the settlement rather than those "raised and raisable." SAIF paid claimant's attorney $250 in attorney fees as part of the agreement. Claimant signed the stipulation with the understanding that it would not affect his ability to litigate his claims for time loss arising from the 1996 injury.

After the ALJ approved the stipulation, claimant changed lawyers. Thereafter, the claim proceeded to a hearing on the unresolved issues arising from both the 1995 injury and the 1996 injury. At the hearing, claimant challenged the validity of the May 1997 stipulated settlement. The Board held that the settlement was valid, and that is the only part of its order that claimant attacks on review. On review, claimant argues that the settlement agreement does not comply with ORS 656.289(4) and OAR 438-009-0010 and should be set aside.

Evaluating claimant's argument requires a consideration of the various mechanisms for settling all or part of a workers' compensation claim. As a general rule, "no release by a worker or beneficiary of any rights under [ORS chapter 656] is valid except pursuant to a claim disposition agreement under [ORS 656.236] or a release pursuant to ORS 656.593." ORS 656.236(8). However, two separate statutes authorize a claimant and an employer to enter into two discrete kinds of settlements that include a release of rights. First, ORS 656.236(1) provides that the parties to a claim may make any disposition of it, except for medical services, that they consider reasonable, subject to whatever terms and conditions the Board prescribes. The disposition is subject to

Board approval by a final order. Unless otherwise specified, a disposition under ORS 656.236(1) could resolve all issues potentially arising out of the claim, other than medical services. Second, ORS 656.289(4) allows the parties to a claim to agree to a disposition of the claim that they consider reasonable where there is a bona fide dispute over compensability. Again, the disposition is subject to approval by an ALJ, the Board, or an appellate court, depending on the stage that the claim has reached in the review process.

The Board has adopted rules to implement those statutes. A "Claims Disposition Agreement" (CDA), as defined in OAR 438-009-0001(1), implements ORS 656.236(1). A CDA is a written agreement in which a claimant agrees to release rights, or to release an insurer or self-insured employer from obligations, except for medical services, in an accepted claim. OAR 438-009-0020 through OAR 438-009-0035 require the parties both to provide information for the Board to review in deciding whether to approve the CDA and also to give the claimant information concerning the effect of agreeing to the CDA.

In contrast to a CDA, a DCS, as defined in OAR 438-009-0001(2), is a written agreement by which the parties agree to make a reasonable disposition of a claim in which there is a bona fide dispute over the compensability of the claim. That rule implements ORS 656.289(4). The applicable administrative rule requires the parties to provide information to the Board, along with assurances that the claimant has been thoroughly informed of the effect of the DCS, before the Board will approve it. OAR 438-009-0010.

One obvious distinction between a CDA and a DCS is that a CDA involves an accepted claim while a DCS involves a denied claim that remains denied. In its decisions, the Board has held that a CDA is proper only when it entirely disposes of an accepted claim, except for medical services. A CDA is not an appropriate way to resolve some but not all of the issues that arise in the processing of a claim. *See, e.g., Jeffrey B. Trevitts,* 46 Van Natta 1767, 1775-76 (1994); *Lynda J. Thomas,* 45 Van Natta 894, 895 (1993). Presumably for that reason, no party suggests that it was possible to implement the settlement in this case by a CDA. On the other

hand, the Board's decisions suggest that, as the rule indicates, a DCS is appropriate primarily when the claimant agrees to keep the claim in a denied status in exchange for the payment of an agreed amount of money. *See, e.g., George M. Brown*, 52 Van Natta 5 (2000); *Forest G. Hull*, 51 Van Natta 1795 (1999).[2]

Because a CDA is proper only when the parties intend to resolve all aspects of a claim other than medical benefits, and because a DCS is proper only when the issue is the resolution of a claim denial and may be limited to situations in which the parties intend the claim to remain denied, neither is suitable for many of the other issues that could arise during the course of a claim. Accordingly, the Board's rules provide for a third category of settlement, a "settlement stipulation," which OAR 438-009-0001(3) defines as

> "a written agreement, or an oral agreement if made on the oral record of a hearing and approved in writing by a [*sic*] Administrative Law Judge, in which any matter contested between the parties, other than matters resolvable in a claim disposition agreement or disputed claim settlement, are [*sic*] resolved by agreement of the parties."

OAR 438-009-0005 provides the few rules that govern settlement stipulations. Under those rules, the parties may resolve the contested matters at any time. The information that the parties must provide to the ALJ is significantly more limited than the information that must be provided for a CDA or a DCS, and there is no requirement that anyone provide the claimant any specific information about the effect of the stipulation. The rule does not even require that a claimant who is represented by a lawyer sign the stipulation or orally indicate agreement with or acceptance of it. The ALJ must approve any stipulation, but the rule does not provide any criteria for the ALJ to apply in deciding whether to approve it.[3] Those rules do not refer to a "denied" claim.

---

[2] OAR 438-009-0010(2)(c) provides that a DCS must contain a recital that there is a bona fide dispute as to the compensability of the claim and that the parties have "agreed to compromise and settle the denied and disputed claim[.]" The quoted phrase indicates that the settlement is of the entire claim, which suggests that, after the settlement, it will be entirely resolved. A settlement that contemplates the acceptance and further processing of a formerly denied claim does not appear to fit within those terms.

[3] The statutory authority for a settlement stipulation is not entirely clear. Such a stipulation does not appear to fall within the terms of ORS 656.289(4).

It appears from the Board's cases that parties use settlement stipulations in a wide variety of circumstances. We cite only two examples. In *Carolyn S. Asti*, 51 Van Natta 1706 (1999), the Board noted that the ALJ had approved a settlement stipulation under which the employer withdrew its denial of compensability and agreed to treat the claimant's current condition as compensable under a previous claim, which it agreed to reopen. In *Kenneth F. Plumber*, 51 Van Natta 1239 (1999), the parties had agreed to a settlement stipulation under which the claimant would withdraw a request for sanctions and dismiss his request for a hearing in exchange for the employer's agreement to pay temporary disability until it decided whether to accept or deny the claim, to pay a penalty, and to decide whether to accept or deny the claim within 30 days from the ALJ's approval of the settlement. Neither of those cases involved the ultimate denial of a claim, and in *Asti* the stipulation resolved the employer's denial of a claim by the employer withdrawing it.

■     The question, then, is whether a settlement stipulation under OAR 483-009-0001(3) was the proper way to implement the parties' agreement in this case. Because the stipulation did not resolve all issues in the claim, other than medical benefits, a CDA would not have been appropriate. Whether the parties should have used a DCS rather than a "settlement stipulation" depends on what precisely was the "claim" that the settlement attempted to resolve. Claimant argues that because the settlement resulted in the continued denial of a claim, *i.e.*, his claim for a new injury, it falls under the provisions of ORS 656.289(4), which under the rules require a DCS.[4] SAIF argues that the "claim" was claimant's injury, not a piece of paper filed by claimant, and that it agreed in the stipulated settlement to accept that broadly

However, ORS 656.236(1), unlike the rules governing a CDA, does not expressly limit the authority to settle to agreements that resolve an entire claim, although it may contemplate that that will ordinarily be the result of a settlement. The statute is probably sufficient to authorize a settlement stipulation. Another possibility is that such a stipulation is an exercise of the inherent authority of a quasi-judicial body to approve a settlement of issues before it. That possibility may run afoul of ORS 656.236(8).

    [4] Although claimant does not directly say so, the premise of his argument appears to be that, because the settlement stipulation maintained his new claim in denied status, it implicated the requirements for a DCS.

defined claim as a compensable aggravation of the accepted 1995 injury. Thus, SAIF says, it did not deny the new injury claim, and there was no need for a DCS.

■ Under ORS 656.005(6), a claim is "a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge." Although the portion of the definition that refers to the employer's knowledge of the injury might suggest that the injury itself is the "claim," that suggestion is incorrect. The first part of the definition expressly requires a writing, and even when the employer knows of the injury, ORS 656.265 requires a written request, generally within 90 days, in order to perfect the claim. An injury that is a "claim" under the statutory definition only because the employer has notice of it will become void in the absence of a written request made within the required time. *See McPhail v. Milwaukie Lumber Co.*, 165 Or App 596, 603-05, 999 P2d 1144 (2000). Thus, although an injury creates the basis for a claim, for the purposes of processing, the "claim" is the written request for compensation.

In this case, there are two written requests, one for a new injury and one for an aggravation. SAIF denied the first claim and accepted the second. In the stipulation at issue, the parties agreed that the new injury claim would remain denied. Because the new injury claim is distinct from the aggravation claim, the stipulation in effect attempted to dispose of a denied claim under ORS 656.289(4), and the applicable rule requires a DCS to achieve that result.

SAIF relies on *Greenwade v. SAIF*, 41 Or App 697, 598 P2d 1265, *rev den* 288 Or 173 (1979), to support its argument that a stipulation is authorized when a claim remains denied. In *Greenwade,* the claimant agreed to a stipulation to resolve a dispute over a denied claim. Under the stipulation, the claimant received $2,000 and the claim remained denied.[5] Thereafter the claimant sought to set the stipulation

---

[5] So far as the opinion indicates, at the time of *Greenwade* a stipulation was an appropriate method of implementing a settlement of this kind. The Board began adopting the current rules on implementing a settlement in 1984, well after the settlement in *Greenwade*. In any event, no party in *Greenwade* raised any issues about the method of the settlement, and we therefore did not consider the issue that confronts us in this case.

aside. He relied in part on *Schulz v. Compensation Department*, 252 Or 211, 448 P2d 551 (1968), in which the Supreme Court affirmed the Board's decision to set aside a stipulation that determined the amount of compensation that the claimant received as a result of a settlement of an accepted claim. 41 Or App at 700-01. We rejected the claimant's argument, pointing out that there are two issues when a worker makes a claim for compensation: first, whether the injury is compensable and, second, if it is compensable, the amount of benefits to which the worker is entitled. We said that using a case involving a stipulation concerning the extent of compensation to support the setting aside of a stipulation to deny compensability is comparing apples and oranges. *Id.* at 701.

In deciding *Greenwade*, we emphasized that the issue of compensability involves whether the injury arose out of and in the course of the worker's employment. 41 Or App at 701. SAIF argues in this case that there is no dispute over that issue; it agrees that the 1996 injury is compensable, although SAIF believes that it is compensable as an aggravation of the 1995 injury rather than as a new injury. Thus, according to SAIF, because it agrees that the injury is compensable, there is no denied claim that would require a DCS. The problem with SAIF's argument is that it fails to recognize that claimant made two claims arising out of the same injury, that SAIF denied one of those claims, and that the settlement stipulation expressly upholds that denial. The fact that SAIF agrees that the injury is compensable as an aggravation does not affect the fact that SAIF denied it as a new injury. For that reason, our discussion in *Greenwade*, which is correct in the context of that case, is inapplicable to this case. Here, the issue is not whether the claim is compensable at all but whether it is compensable as a new injury. A new injury claim is distinct from an aggravation of an existing accepted claim and can be more beneficial to a claimant than an aggravation claim. Among other things, a new claim provides a new date for measuring the claimant's aggravation rights. *See* ORS 656.273(4). Thus, because there are issues concerning the denial of claimant's new injury claim in this case in addition to whether the injury is compensable in another way, *Greenwade* is not controlling.

We conclude that, because the applicable statutes and rules required the parties to implement any settlement that leaves the new injury claim in denied status through a DCS, rather than through a settlement stipulation, the settlement stipulation is void. The settlement does not meet the statutory and rule requirements for the resolution of a denied claim. It follows that the Board erred in upholding the settlement stipulation.

Reversed and remanded.