Argued and submitted November 30, 1998, reversed and remanded in part;
otherwise affirmed February 23, 2000

Don MCPHAIL,
*Appellant,*

*v.*

MILWAUKIE LUMBER CO.,
an Oregon corporation;
Steve Morse and Patrick Fitzgerald,
*Respondents.*

(9606-04339; CA A98729)

999 P2d 1144

Charles J. Merten argued the cause and filed the briefs for appellant.

James Westwood argued the cause for respondents. With him on the brief were Thomas C. Sand, Sharon L. Toncray and Miller, Nash, Wiener, Hager & Carlsen.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

ARMSTRONG, J.

---

* Kistler, J., *vice* Warren, P. J., retired.

## ARMSTRONG, J.

Plaintiff appeals from a summary judgment that dismissed all of his claims against Milwaukie Lumber Co., his former employer, Steve Morse, the primary owner of Milwaukie Lumber, and Patrick Fitzgerald, a Milwaukie Lumber sales manager. All of the claims arise from Milwaukie Lumber's termination of plaintiff's employment. We reverse as to Milwaukie Lumber on all but two of the claims and affirm as to the individual defendants.[1]

Plaintiff began working for Milwaukie Lumber in 1992 after Morse and Fitzgerald recruited him from Parr Lumber, where he had worked for a number of years. While working at Parr, plaintiff was covered by a union contract that protected him from termination without just cause, and he had sufficient seniority that it was highly unlikely that he would lose his job as the result of a layoff. As part of the inducement for plaintiff to move to Milwaukie Lumber, Morse promised that he would have a job until his retirement, which at the time was approximately 17 years away. There was no discussion of termination for cause, but plaintiff does not assert that he was protected from termination for actual misconduct.

In 1994, Milwaukie Lumber produced its first employee handbook. Among other things, the handbook stated that employment at the company was at will. The handbook also provided that an employee would be suspended for a week without pay if the employee received three written notices of an unsatisfactory event or situation during any calendar year. Plaintiff signed a receipt for his copy of the handbook in which he stated, in part, "I understand that my employment with Milwaukie Lumber Co. will continue at the will of the Company and myself and may be terminated at any time for any reason, by any party." He did not receive a pay increase or other obvious consideration in return for

---

[1] Plaintiff's claims against the individual defendants are based on aider and abettor liability and general agency principles. He recognizes that *Schram v. Albertson's* 146 Or App 415, 934 P2d 483 (1997), *rev dismissed* 328 Or 366, 328 Or 419 (1999), is against his position but asks that we overrule that case. We decline to do so and therefore affirm the judgment as to those defendants.

signing that statement. Morse was unable to identify anything else that plaintiff received in exchange for his signature.

In late 1994, Fitzgerald became increasingly volatile and demanding, placing great stress on plaintiff, who had to work closely with him. That stress affected plaintiff's relationships with other sales staff, which in turn increased the stress on plaintiff. Morse failed to deal effectively with Fitzgerald's actions because of the large amount of business that Fitzgerald produced. At the same time, plaintiff began suffering severe gastric and intestinal problems, for which he first sought treatment in January 1995. His physicians found the problems difficult to diagnose but concluded that their cause was the stress that plaintiff was suffering at work. He went to the emergency room on one occasion because of the problems and missed work several times for the same reason.

Several events in June 1995 preceded plaintiff's termination on June 27. The role, if any, that each event played in the termination is disputed. On June 9, one of plaintiff's female coworkers was the subject of a crude sexual remark from another employee; the remark seriously upset her. She reported it to Morse on the same day; Morse checked with her several times later that day to see how she was feeling. He left for vacation the next day. When plaintiff heard about the remark, he told the employee that she might have a good sexual harassment and retaliation claim if she lost her job over her complaints. On June 11, plaintiff told Fitzgerald that the affected employee could sue over the incident. On June 13, the employee and her husband met with Fitzgerald, Michael Crosgrove, the operations manager and plaintiff's direct supervisor, and Tracy Thor, Fitzgerald's assistant; the employee and her husband insisted that the offending employee be fired. Instead, the employee received a week's suspension pending Morse's return. The possibility of a lawsuit scared Fitzgerald; Thor, with Fitzgerald's and Crosgrove's assistance, began keeping a log of plaintiff's activities to discuss with Morse when he returned.

On June 12, plaintiff's stomach problems became acute, forcing him to go home early. The next day, June 13, Fitzgerald berated plaintiff for doing so and threatened him

with firing if he again left without getting in touch with Fitzgerald. That afternoon plaintiff had to leave early again. On June 15, plaintiff's physician scheduled him for a colonoscopy on June 21 and told him not to return to work until after that procedure; he gave plaintiff a written excuse from work, as a result of which Milwaukie Lumber gave plaintiff the time off. During the period between receiving the excuse from work and the colonoscopy, plaintiff went to Reno, Nevada, for a couple days to gamble. Sometime during this period, plaintiff also made statements that suggested that he either had or could get a job offer from another company.

After the colonoscopy, plaintiff's physician told him to rest and not to return to work until Monday, June 26. Milwaukie Lumber later told him not to return until June 27. On June 26, when Morse returned from vacation, Thor, using the log that she had kept of plaintiff's activities, described the events that had taken place after June 11. When plaintiff showed up for work on June 27, Morse fired him, allegedly because plaintiff was disloyal in seeking work elsewhere and because he had taken a pleasure trip to Reno when he was on sick leave.

■ We first consider plaintiff's claims arising from his employment contract with Milwaukie Lumber. In the fifth claim, which he asserts solely against Milwaukie Lumber, plaintiff alleges that, when he came from Parr to Milwaukie Lumber, he was promised employment until age 65 and that Milwaukie Lumber breached that agreement by firing him at age 51. The record on summary judgment, read most favorably to plaintiff, supports the allegations of his complaint. Milwaukie Lumber argues, however, that the employee handbook provides for employment at will and that plaintiff recognized that fact in the acknowledgment that he signed when he received his copy. Plaintiff responds, in part, that there was no consideration for any modification of the original employment contract. We agree with plaintiff.

■ A modification of an existing contract requires additional consideration in order for the modification to be binding. *Jole v. Bredbenner*, 95 Or App 193, 196, 768 P2d 433 (1989). Consideration is "the accrual to one party of some

right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other." *Shelley v. Portland Tug & Barge Co.*, 158 Or 377, 387, 76 P2d 477 (1938). Under that definition, "benefit" means that the promisor has, in return for the promise, acquired a legal right to which the promisor would not otherwise be entitled; "detriment" means that the promisee has forborne some legal right that the promisee would otherwise have been entitled to exercise. *Id.* at 388.

When plaintiff received the employee handbook, he had been working under the original oral contract for well over a year. Taking the evidence in his favor, he was entitled to continue working under that contract until he retired. Morse could not identify any specific benefit or improvement in plaintiff's employment status that occurred when plaintiff received the handbook. The only consideration for the alleged modification that Milwaukie Lumber attempts to identify in its brief is that "[w]ithout remonstrance or complaint, Plaintiff continued to work at Milwaukie Lumber, and to reap the benefits of an efficient, streamlined work environment that maximized sales and profits and supported his paycheck[.]"

Milwaukie Lumber's description of the alleged consideration shows that what it describes is not consideration. If plaintiff "continued" to work and to reap the described benefits, then he did not gain anything new. Because he had a right to employment until retiring, his continuing to work could not constitute consideration for any change in the term of his employment. Even assuming that the employee handbook somehow improved the work environment from what it had previously been, something that Milwaukie Lumber does not attempt to prove, and even accepting the questionable proposition that an improved work environment can be consideration in this context, there is nothing in the handbook that gives plaintiff any legally enforceable right to that improved environment. Indeed, the whole tone of the handbook is that it does *not* create *any* enforceable rights. Milwaukie Lumber's argument is one that any employer could make any time it reorganized its operations; one purpose for a reorganization is, presumably, to improve the business' profits. Whether or not employees ultimately benefit from such changes, they are not the sort of benefit that will support a

modification of an individual employee's contract. The trial court erred in granting summary judgment to Milwaukie Lumber on the fifth claim.

■ In his sixth claim, which he asserts in the alternative to the fifth claim, plaintiff argues that he was entitled to the benefit of the provision in the employee handbook that an employee will receive a written notification of any unsatisfactory situation and will receive one week's suspension if there are three notifications within any calendar year. However, that provision does not limit the other portions of the handbook that make it clear that Milwaukie Lumber retains the authority to terminate an employee without cause. Milwaukie Lumber did not, by describing a situation in which it would suspend an employee, detract from its ability to suspend or terminate an employee in other circumstances. The trial court correctly granted summary judgment on the sixth claim. We turn to the claims based on alleged torts and statutory violations.

In his first claim, plaintiff asserts that Milwaukie Lumber violated ORS 659.410(1) when it discharged him. That statute provides, in part, that it is an unlawful employment practice for an employer to discriminate against a worker "because the worker has applied for benefits or invoked or utilized the procedures provided for in" the Workers' Compensation Law (the Law). The record on summary judgment, including the unchallenged portions of plaintiff's complaint,[2] show that plaintiff notified Milwaukie Lumber in April 1995 that he was having stress at work and that his physician had told him that the stress was the cause of his stomach problems. In June, when he went home early because of those problems, his manager cursed him and threatened his job. Milwaukie Lumber knew that plaintiff was scheduled for tests on June 21 concerning those problems and that his physician had told him not to return to work until June 26. Morse, the majority owner and manager, was upset about paying workers' compensation benefits and

---

[2] For the purposes of a motion for summary judgment, we treat allegations in the pleadings of the nonmoving party that are not challenged by the evidence in the summary judgment record as true. *See Cottle v. Hayes*, 128 Or App 185, 188-89, 875 P2d 493 (1994).

premiums. When plaintiff had previously twisted his knee or ankle, Morse and Crosgrove had told him not to file a claim but to go to a specific physician, whom Milwaukie Lumber paid directly. From these facts, plaintiff argues that a jury could find that preventing a potentially draining workers' compensation claim was a substantial factor in the decision to discharge plaintiff.

Milwaukie Lumber's first response is that plaintiff would be unable to persuade a reasonable jury that his trip to Reno and announcement that he would get another job were only pretexts for his termination. That argument appears to be based, in part, on the federal burden-shifting approach to civil rights law, in which the plaintiff must show that the defendant's explanation for the challenged action was only a pretext. Oregon has rejected that approach. *See Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 75-78, 717 P2d 1252 (1986). It is sufficient in Oregon for the plaintiff to show that the unlawful motive was a substantial and impermissible factor in the discharge decision. *See Winnett v. City of Portland*, 118 Or App 437, 442-43, 847 P2d 902 (1993). In addition, Milwaukie Lumber appears to be asking us to evaluate how strong plaintiff's case would appear to a jury, something that we cannot do if there is any evidence in the record that would support a verdict in plaintiff's favor. Or Const, Art VII (Amended), § 3; *see Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984); *Wooton v. Viking Distributing Co., Inc.*, 136 Or App 56, 62, 899 P2d 1219 (1995), *rev den* 322 Or 613 (1996).[3]

Milwaukie Lumber's primary argument is that plaintiff did not take any actions that might have brought him within the protections of ORS 659.410(1). It points out that the statute protects a worker only if the worker "has applied for benefits" or "invoked or utilized the procedures" of the Law. Because plaintiff never filed a written claim or

---

[3] Milwaukie Lumber argues that it could not have avoided liability under the workers' compensation system for plaintiff's job stress if he had a valid claim. It appears to suggest that that fact somehow means that it cannot be liable under ORS 659.410(1). The point of the statute, however, is to protect a worker's right to pursue a claim without fear of employer retaliation for doing so. That the claim is valid does not mean that an employer cannot illegally discriminate against the worker for having asserted it.

otherwise expressly sought workers' compensation benefits, Milwaukie Lumber argues, he does not have a statutory claim. It says that his statements relaying his physician's conclusion that job stress was responsible for his stomach problems were too vague to lead to an actionable claim. Finally, Milwaukie Lumber asserts that the workers' compensation statutes involving accident claims show that a claim must be in writing in order to be a claim; because plaintiff had not filed a written claim, it argues, he did not invoke the provisions of the Law.

Milwaukie Lumber relies on ORS 656.265(1) and (2), which require an injured worker or a dependent of the worker to give written notice of an accident resulting in injury or death to the employer not later than 90 days after the accident. Failure to give the notice bars a claim unless the notice is given within one year after the accident and the employer knew of the injury or death or the worker died within 180 days of the accident. As plaintiff points out, any workers' compensation claim was probably an occupational disease rather than accident claim. The requirements for occupational disease statutes are similar to those for injury claims. Under ORS 656.807(1), an occupational disease claim is void unless it is filed with the insurer or self-insured employer within a year from certain dates.

The underlying problem with Milwaukie Lumber's argument is that the statutes that it cites do not describe what constitutes a claim but, instead, describe what is necessary to perfect an existing claim. ORS 656.005(6) defines a workers' compensation claim as "a written request for compensation from a subject worker or someone on the worker's behalf, *or any compensable injury of which a subject employer has notice or knowledge.*" (Emphasis added.) Thus, if Milwaukie Lumber knew that plaintiff had an occupational disease, then that knowledge constituted a claim, even if plaintiff had not given the written notice that was required to perfect it. The effect of ORS 656.265 is to make an accident claim void in the absence of the written notice within the times that the statute describes. ORS 656.807 has a similar effect for an occupational disease claim. Neither statute limits the statutory definition of a claim. By verbally notifying Milwaukie

Lumber of his stomach condition and of its possible relationship to the stress that he experienced at work, plaintiff gave it knowledge of an existing claim. When Milwaukie Lumber terminated his employment, the time for filing the written notice had not yet elapsed, and the claim remained viable.

 The Bureau of Labor and Industries, which is charged with enforcing ORS 659.410, has adopted a rule that defines "invoke" under the statute as including "a worker's reporting of an on-the-job injury or a perception by the employer that the worker has been injured on the job or will report an injury." OAR 839-006-0105(2). Although the Bureau's rules do not determine the meaning of the statute, they are entitled to substantial deference because of the Bureau's expertise and the role that the legislature has given it with regard to these statutes. *See Knapp v. City of North Bend,* 304 Or 34, 40-42, 741 P2d 505 (1987). We have, in fact, at times accepted the Bureau's interpretations of these laws. *See, e.g., Lane County v. State of Oregon,* 104 Or App 372, 376-77, 801 P2d 870 (1990), *rev den* 759 P2d 1116 (1991). In this case, the Bureau's rule is consistent with the Law's definition of "claim" and with the policy of the statute to prohibit discrimination based on using the workers' compensation system. We think that it correctly states the meaning of "invoke" in ORS 659.410. *Cf. Parker v. Fred Meyer, Inc.,* 152 Or App 652, 654-56, 954 P2d 1272, *rev den* 327 Or 123 (1998) (upholding claim under ORS 659.410(1) when worker did not file a claim until after the allegedly discriminatory action). As a result, we hold that, based on the evidence on summary judgment, a jury could conclude that plaintiff had invoked the procedures provided in the Law. There are, thus, triable issues of fact on plaintiff's first claim; the trial court erred in granting summary judgment in favor of Milwaukie Lumber on it.

 In the alternative to his first claim, plaintiff alleges in his second claim that Milwaukie Lumber fired him because he "had or would invoke or utilize" the procedures of the Law and that that action violates the public policy underlying ORS chapter 656 and ORS 659.410(1). He recognizes that ORS 659.410(1) provides his exclusive remedy if that statute is applicable. *Farrimond v. Louisiana-Pacific Corp.,*

103 Or App 563, 798 P2d 697 (1990). Under the statute as the Bureau construed it in OAR 839-006-0105(2), a construction that we have adopted, terminating plaintiff because of a concern that he would invoke or use the procedures of the Law is a violation of ORS 659.410(1). That statute, therefore, applies to all of the facts that plaintiff pled in his second claim for relief. As a result, it provides his exclusive remedy; there is nothing left for a common-law wrongful discharge claim. For that reason, we affirm the dismissal of plaintiff's second claim.

In his third claim, plaintiff alleges that he was discharged for opposing the sexual harassment of a fellow employee. He appears to bring this claim both as a statutory claim under ORS 659.030(1)(f) and as a common-law wrongful discharge claim under the principles established in *Holien v. Sears, Roebuck & Co.*, 298 Or 76, 689 P2d 1292 (1984). Milwaukie Lumber's primary response is that there was no actionable sexual harassment for plaintiff to oppose. It points out that the employee who made the offensive remark was not a managerial employee and argues that the company acted immediately to deal with the situation that the remark created, to the ultimate satisfaction of the offended employee. That argument incorrectly shifts the focus from the reason for Milwaukie Lumber's termination of plaintiff's employment to the merits of a claim that the female employee might bring against Milwaukie Lumber.

The statute prohibits discrimination against an employee who has opposed practices that the statute forbids, who has filed a complaint, testified, or assisted in any administrative proceeding to enforce those statutory rights, or who has attempted to do so. ORS 659.030(1)(f). Sexual harassment constitutes prohibited discrimination on the basis of sex if the harassment creates a work environment that is intimidating *or* hostile *or* offensive. OAR 839-007-0550; *see Fred Meyer, Inc. v. BOLI*, 152 Or App 302, 307, 954 P2d 804 (1998). The statutory protections for filing a complaint, testifying, or assisting in an administrative proceeding, of course, do not require that the complaint be valid; the legislature considered it important to protect those who do those things whether or not the claim was ultimately successful. *See, e.g.,*

*Lewis and Clark College v. Bureau of Labor*, 43 Or App 245, 602 P2d 1161 (1979), *rev den* 288 Or 667 (1980).

 The foundation of Milwaukie Lumber's argument is that the legislature somehow decided to treat a person who simply opposed unlawful discrimination differently from a person who participated in processing a complaint of unlawful discrimination. It is not entirely clear why the legislature would make that distinction, and the words of the statute do not require it.[4] However, we do not need to decide the issue, because Milwaukie Lumber did not make that argument at the trial court. Plaintiff, thus, did not have an opportunity to present evidence relevant to the argument, and we will not consider it on appeal. *See Zerba v. Ideal Mutual Ins. Co.*, 96 Or App 607, 611-12, 773 P2d 1333 (1989).

 At the trial court Milwaukie Lumber argued that the employee reported the incident and was pleased with Milwaukie Lumber's response. Because the employee was not subject to any retaliation, Milwaukie Lumber argued,

> "it strains credulity for [plaintiff] to assert that the basis for his discharge was the comment he made about an incident that Milwaukie Lumber had addressed and resolved to [the employee's] satisfaction, particularly when she was the one to report the incident."

The argument, thus, was that Milwaukie Lumber's failure to discriminate against the affected employee meant that it had also not discriminated against plaintiff. That argument does not suggest that there was in fact no sexual harassment— which is Milwaukie Lumber's argument on appeal—only that the harassment was satisfactorily resolved. Milwaukie Lumber's argument at the trial court was one that would be appropriate for a jury but that was not appropriate for a court on summary judgment. The court's role on summary judgment is not to decide whether its credulity has been strained

---

[4] A person may well have "opposed any practices forbidden by this section [and other statutes]" whether or not those practices actually occurred, by opposing the threatened or perceived actions. *Cf. McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or App 107, 684 P2d 21, *rev den* 298 Or 37 (1984) (it is sufficient for wrongful discharge claim that the plaintiff believed in good faith that patient abuse occurred; she did not have to prove that the actions in fact constituted patient abuse).

but to determine whether there is a genuine issue of material fact.

■ Finally, in his fourth claim plaintiff alleges that Milwaukie Lumber discriminated against him on the ground of disability in violation of ORS 659.425(1) by failing to make a reasonable accommodation of his physical disability—the gastric problems that resulted from his work-related stress. Milwaukie Lumber's only argument on this claim is that it had no duty to accommodate plaintiff by giving him time to take a pleasure trip to Reno. Again, that is an argument that is more appropriate for a jury than for a court on summary judgment. According to plaintiff's evidence, his physician told him not to return to work before his colonoscopy, which was scheduled for, and occurred on, June 21. Based on the physician's statement, Milwaukie Lumber allowed plaintiff to take the intervening time as sick leave. That action could be seen as a reasonable accommodation to his disability, while subsequently penalizing him for the way in which he used that necessary time off could be seen as an *ex post facto* failure to accommodate. Milwaukie Lumber was not entitled to summary judgment on this claim.

Reversed and remanded as to Milwaukie Lumber Co. on first, third, fourth, and fifth claims; otherwise affirmed.