# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATTHEW HEAD,
            *Plaintiff-Appellant,*

v.

GLACIER NORTHWEST,
INCORPORATED, a Washington
corporation,

            *Defendant-Appellee.*

No. 03-35567

D.C. No.
CV-02-00373-MA

OPINION

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, District Judge, Presiding

Argued and Submitted
December 8, 2004—Portland, Oregon

Filed July 6, 2005

Before: Thomas G. Nelson and Johnnie B. Rawlinson,
Circuit Judges; and William W Schwarzer,*
Senior District Judge.

Opinion by Senior District Judge Schwarzer;
Concurrence by Judge T.G. Nelson

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

## COUNSEL

Scott N. Hunt, Busse & Hunt, Portland, Oregon, for the plaintiff-appellant.

William T. Grimm, Davis Grimm Payne & Marra, Seattle, Washington, for the defendant-appellee.

## OPINION

SCHWARZER, Senior District Judge:

Matthew Head appeals the district court's grant of partial summary judgment in his action against his former employer, Glacier Northwest ("Glacier"), on his claims for disability discrimination under the Americans with Disabilities Act ("ADA") and Oregon state law on the basis of disability and record of disability. Head also appeals the district court's exclusion of lay opinion testimony during the trial on his perceived disability and retaliation claims. Finally, Head challenges the district court's jury instructions requiring him to demonstrate that Glacier discriminated against him "because

of" his perceived disability and retaliated against him "because" of his request for an accommodation. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the grant of summary judgment, affirm the exclusion of lay opinion testimony, vacate the jury verdict, and remand for further proceedings consistent with this opinion.

## I.  FACTS AND PROCEDURAL HISTORY

On June 29, 2001, Glacier, Matthew Head's employer, terminated him after he got a loader he was operating stuck in the mud. The loader had to be extracted by another piece of equipment. In terminating Head, Glacier cited damage to the loader in violation of an equipment abuse policy issued in 2000. It was undisputed that Head had received this policy.

In early 2001, prior to his termination, Head was diagnosed with depression or bipolar disorder. Head informed Glacier of this diagnosis. At the time of his diagnosis, Head worked graveyard shift as a barge offloader. Head subsequently missed almost two months of work because of his disability. Head requested, and was granted, a Family Medical Leave of Absence for this time period. Although Head returned to work in May 2001, his doctors restricted him from working more than 12 hours per day or 48 hours per week. The doctors also limited Head to working only the day shift.

After his termination, Head filed numerous claims in federal district court. Of relevance to this appeal were Head's claims under the ADA and Oregon law for disability discrimination based on Head's disability, record of disability, or perceived disability, and for retaliation for requesting an accommodation. Glacier moved for summary judgment. In opposition to Glacier's motion, Head did not submit medical or comparative evidence in support of his claims, but did submit numerous affidavits and other evidence. Ultimately, the district court granted partial summary judgment in favor of Glacier on Head's discrimination claims based on disability

and a record of disability. The court reasoned that Head had failed to demonstrate a genuine issue of material fact regarding substantial impairment because he did not present any medical or comparative evidence to support his claims that his disability substantially impaired any major life activities.

The remainder of Head's claims, for (1) discrimination under the ADA and Oregon law for perceived disability, and (2) retaliation under the ADA and Oregon law for requesting an accommodation, went to trial. The rest of the issues on appeal relate to facts that occurred during the trial.

During the trial, Head's counsel asked a lay witness the following question about the incident with the loader that preceded Head's termination: "Was there anything about the position where Mr. Head was stuck or the location of the loader in the material it was stuck in that caused you to believe that he had violated the equipment abuse policy?" Glacier's counsel objected. The district court sustained the objection based on its earlier decision that lay opinion testimony regarding whether Head's getting the loader stuck constituted equipment abuse would not be allowed. The district court believed that such testimony should not be allowed under Federal Rule of Evidence 701. Accordingly, the witness did not answer counsel's question.

As the trial neared its conclusion, the court and parties discussed the jury instructions. Of primary concern was whether to give a single-motive "because of" instruction or a mixed-motive "motivating factor" instruction for Head's state and ADA-based discrimination and retaliation claims. Relying on *Costa v. Desert Palace, Inc.*,[1] a Title VII case, the district court concluded that single-motive "because of" instructions were appropriate.[2] The jury instruction for disability discrimi-

---

[1] 299 F.3d 838 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003).

[2] *Id. Costa* states that:

nation therefore required Head to prove that Glacier terminated him "because of" his perceived disability. The jury instruction for retaliation due to a request for accommodation therefore required Head to prove that Glacier discharged him solely "because" he requested a reasonable accommodation. The jury returned a verdict in favor of Glacier.

Head now appeals the district court's partial grant of summary judgment, the district court's exclusion of lay witness testimony regarding whether he violated the equipment abuse policy, and the jury instructions. Head argues that the district court erred by requiring medical and comparative evidence to substantiate the substantial impairment of major life activities at the summary judgment stage. We agree and reverse and remand as to this issue. Head argues that the district court improperly excluded the lay witness testimony. We disagree and affirm as to this issue. Finally, Head argues that the district court erred by giving "because of" and "because" jury instructions rather than "motivating factor" instructions. We agree, vacate the jury verdict, and remand as to this issue.

---

> If, based on the evidence, the trial court determines that the only reasonable conclusion a jury could reach is that discriminatory animus is the *sole* cause for the challenged employment action or that discrimination played *no* role at all in the employer's decisionmaking, then the jury should be instructed to determine whether the challenged action was taken "because of" the prohibited reason.
>
> . . .
>
> In contrast, in cases in which the evidence could support a finding that discrimination is one of two or more reasons for the challenged decision, at least one of which may be legitimate, the jury should be instructed to determine . . . whether the discriminatory reason was "a motivating factor" in the challenged action.

*Costa*, 299 F.3d at 856-57 (emphasis in original). The district court was correct in assuming that *Costa* applies to ADA actions. *See infra* Part III.B.2.

## II. SUMMARY JUDGMENT

We review the district court's grant of summary judgment de novo.[3] We only review " 'evidence available to the [district] court at the time the motion was made.' "[4] The facts must be viewed in the light most favorable to Head.[5]

We hold that Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage. Rather, our precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact. *McAlindin v. County of San Diego*[6] and *Fraser v. Goodale* are illustrative.

In *McAlindin*, we discussed medical evidence, but did not explicitly or otherwise require it.[7] In fact, we held that a statement in a declaration by McAlindin alone sufficed to raise a genuine issue of material fact regarding the impairment of a major life activity: his ability to engage in sexual relations.[8] Additionally, McAlindin's declaration played a central role in our holding that sufficient evidence supported the existence of a genuine issue of material fact as to his sleeping claim.[9] Finally, although we discussed doctors' evaluations of McAlindin's inability to interact with others, we held that "[h]is alleged 'fear reaction' and 'communicative paralysis' are sufficiently severe to raise a genuine issue of material fact

---

[3]*Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003), *cert. denied*, 541 U.S. 937 (2004).

[4]*Id.* at 1036 (quoting *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1121 (9th Cir. 1994)) (parallel citation omitted).

[5]*Id.* at 1037.

[6]192 F.3d 1226 (9th Cir. 1999).

[7]*See McAlindin*, 192 F.3d at 1235-36.

[8]*Id.* at 1235.

[9]*See id.*

about his ability to interact with others."[10] Granted, this holding regarding the inability to interact with others relied more on medical testimony than did our conclusions regarding the other two major life activities, but we did not *require* medical testimony.

*Fraser* also did not require medical or comparative evidence at the summary judgment stage. In *Fraser*, a diabetic argued that her diabetes substantially limited the major life activities of eating, caring for herself, and thinking and communicating.[11] After determining that under certain circumstances eating is a major life activity, we held that Fraser's presentation of evidence about her demanding and highly difficult treatment regimen precluded a grant of summary judgment.[12] The evidence on which we relied consisted primarily of Fraser's testimony regarding her dietary regime. We also considered some medical testimony that even if Fraser perfectly followed her regime she could still have complications; however, we placed no emphasis on this medical testimony.[13] Thus, *Fraser* indicates that medical testimony may be helpful, but it is not required.

[1] Additionally, in rejecting Fraser's claim that she was substantially limited in caring for herself and thinking and communicating, we faulted the quantity of the evidence presented, not the nature of it.[14] We concluded that although Fraser's statements showed the effects on these life activities, there was insufficient "evidence that she is so unsuccessful in monitoring her blood sugar levels that she is *substantially* limited in [these major life activities]."[15] Accordingly, *Fraser*

---

[10]*Id*. at 1235-36.

[11]*Fraser*, 342 F.3d at 1041.

[12]*See id*. at 1042.

[13]*Id*. at 1041-42.

[14]*Id*. at 1043-44.

[15]*Id*. at 1043 (emphasis added).

supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact. Consequently, it follows that comparative or medical evidence at the summary judgment stage is not required. We hasten to add that our holding in no way impugns our longstanding precedent that conclusory declarations are insufficient to raise a question of material fact.[16] To survive summary judgment, an affidavit supporting the existence of a disability must not be merely self-serving and must contain sufficient detail to convey the existence of an impairment.[17]

Because we conclude that plaintiffs need not supply comparative or medical evidence if they provide other adequate evidence, we must now determine whether Head provided adequate evidence in this case. Thus, to determine whether the grant of summary judgment was appropriate, we review Head's alleged impairment of each major life activity.[18] We conclude that Head has alleged sufficient evidence to demonstrate a substantial impairment in the established major life activities of sleeping, interacting with others, and thinking. Moreover, we conclude that reading is a major life activity, and that Head has alleged sufficient evidence of a substantial impairment regarding reading.[19] Accordingly, we reverse the grant of summary judgment as to each claimed major life activity.

---

[16]See FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).

[17]Id.

[18]Fraser, 342 F.3d at 1040-44.

[19]Head also argues that he is substantially impaired in the major life activities of caring for himself and concentrating. However, we decline to consider these additional major life activities because Head did not raise them before the district court. See Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1003-04 (9th Cir. 2002).

## A. Sleeping

[2] Sleeping is a major life activity.[20] Head's declaration alleging great difficulty sleeping at night, with some improvement when using sleep medication, suffices to raise a genuine issue of material fact.[21] He explained that:

> [even] after getting on medication my sleeping improved but I still periodically had serious problems. I would pass out for a while immediately after getting home from work. But I would not get a full night's sleep, and then after I woke up I had great difficulty going to sleep when it was time to go to bed for the night. This went on for months. Even with the medication I usually was only able to sleep five or six hours a night, compared to the seven to nine hours a night I slept prior to my diagnosis. I was drowsy during the day due to the medications and lack of sleep. Some nights even with the help of medications I could not get to sleep for hours or even at all.

Under *McAlindin*, this is sufficient evidence to preclude summary judgment.[22] Accordingly, Head has alleged sufficient evidence to demonstrate a substantial impairment in the major life activity of sleeping.

## B. Interacting with Others

Interacting with others is a major life activity.[23] To demonstrate a substantial impairment in the ability to interact with

---

[20]*McAlindin*, 192 F.3d at 1230.

[21]*See id.* at 1235.

[22]*See McAlindin*, 192 F.3d at 1235.

[23]*Id.* at 1230.

others, Head "must show that his 'relations with others were characterized on a regular basis by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary.' "[24] At the summary judgment stage, an "alleged 'fear reaction' and 'communicative paralysis' are sufficient[ ] to raise a genuine issue of material fact about [Head's] ability to interact with others."[25]

In *McAlindin*, the testimony of doctors established that McAlindin was always anxious. This led McAlindin "to constrict outside activities and stay away from crowds, shopping centers and any disagreement with his wife."[26] He was around the house at least 20 hours a day and confined his social activities to his family.[27] We emphasized that this occurred "all of the time."[28]

[3] In this case, Head's affidavit alleges that he avoids crowds, stores, large family gatherings, and even doctor's appointments. Furthermore, Head would not leave the house most weekends before he was fired, and after he was fired he would not leave the house for weeks on end. Head even avoided telephone interaction unless "there were serious consequences" for not responding to phone calls. Head has not alleged that this behavior occurs all the time, but rather that it occurs "many times" or "most" of the time. Thus, Head has stated facts slightly less severe than those found sufficient in *McAlindin*.[29] Nonetheless, he has still alleged sufficient facts to show a "substantial limitation" and to avoid summary judg-

---

[24]*Id.* at 1235 (quoting Equal Employment Opportunity Commission, *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities* 5 (March 25, 1997)).

[25]*Id.* at 1235-36.

[26]*Id.* at 1235.

[27]*Id.*

[28]*Id.*

[29]*Id.* at 1235-36.

ment.[30] Accordingly, Head has alleged sufficient evidence to demonstrate a substantial impairment in the major life activity of interacting with others.

### C.   *Thinking*

[4] Thinking is a major life activity.[31] *Fraser* instructs that the inability to think three times in five months does not constitute a substantial limitation of the ability to think.[32] However, Head has alleged a much more persistent problem with his ability to think than that found insufficient in *Fraser*.[33] Head's affidavit states the following regarding the ability to think:

> My bipolar disorder and/or depression greatly affected my short-term memory and ability to concentrate both before and after I was hospitalized. I could not stay focused on something for more than brief periods. I did not have much of a short-term memory at all. I had to be repeatedly reminded of appointments, or tasks I had to do. . . . If I looked at written material for too long things just got jumbled in my mind and I would have to stop. I could not sit and focus on an entire television show. In the fall of 2001 I quit school because of my inability to focus or concentrate adequately.

Taken in the light most favorable to Head, these statements indicate that his ability to think was almost constantly impaired at some level. Accordingly, Head has alleged suffi-

---

[30] *See Fraser*, 342 F.3d at 1043.

[31] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir. 1999); *see Fraser*, 342 F.3d at 1044 (recognizing that "thinking and communicating" is a major life activity).

[32] *Fraser*, 342 F.3d at 1044.

[33] *See id.*

cient evidence to demonstrate a substantial impairment in the major life activity of thinking.

## D.　Reading[34]

[5] At least one court of appeals has held that reading is a major life activity.[35] We have not previously addressed whether reading is a major life activity. We now recognize that reading is a major life activity.

[6] "Federal regulations describe major life activities as including functions 'such as caring for oneself, walking, seeing, hearing, speaking, breathing, learning, and working.' "[36] We have recognized that the "illustrative list of major life activities requires the activity only to be of 'comparative importance' and 'central to the life process itself,' and it need not have a public, economic, or daily character."[37] To be a major life activity, the activity need not be essential to survival, but rather "of central importance to most people's daily lives."[38]

[7] The ability to read is necessary in many instances to perform major life activities such as caring for oneself, learning, and working. As such, it is of central importance to most people's daily lives. To be sure, a person will not die merely because he or she cannot read, but that is not the standard. The fact that reading is of comparative importance, and that it is central to most people's daily lives, establishes that read-

---

[34]Although this claim is arguably a subset of Head's thinking claim, because he alleged it separately in the district court, we discuss it separately.

[35]*Bartlett v. N.Y. State Bd. of Law Examiners*, 226 F.3d 69, 80 (2d Cir. 2000).

[36]*Fraser*, 342 F.3d at 1039 (quoting 45 C.F.R. § 84.3(j)(2)(ii); citing 29 C.F.R. § 1630.2(i)) (emphasis omitted).

[37]*Id*. at 1039-40 (quoting *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998)).

[38]*See id*. at 1040.

ing is a major life activity.[39] Consequently, we hold that reading is a major life activity. Accordingly, to survive summary judgment on his reading claim, Head had to allege sufficient facts to establish a substantial impairment of his ability to read.[40]

[8] In his affidavit, Head alleged that "[r]eading was especially difficult. I basically did not read for more than three to five minutes at a time. If I looked at written material for too long things just got jumbled in my mind and I would have to stop." Taking these allegations in the light most favorable to Head, it appears that his ability to read was substantially impaired by an inability to read more than a few minutes at a time. Accordingly, Head has alleged sufficient evidence to demonstrate a substantial impairment in the major life activity of reading.

[9] We hold that Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage. Under the facts of this case, Head has made the minimal showing necessary to survive summary judgment on his claims for substantial impairment of the major life activities of sleeping, interacting with others, thinking, and reading. Accordingly, we reverse the district court and remand for a determination on the merits of Head's claims based on disability and record of disability.

## III.   TRIAL ERROR

### A.   Lay Opinion Testimony

We review evidentiary rulings for abuse of discretion.[41] We cannot reverse the district court's exclusion of lay witness testimony regarding equipment abuse unless we have a definite

---

[39]See id. at 1039-40.

[40]See id. at 1043-44.

[41]See Tritchler v. County of Lake, 358 F.3d 1150, 1155 (9th Cir. 2004).

and firm conviction that the district court committed a clear error of judgment[42] and the error was prejudicial.[43]

[10] A lay witness may give opinions that are: "(a) rationally based on the perception of the witness, [and] (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue. . . ."[44] In this case, Head argues that the district court abused its discretion by not allowing one of his witnesses to answer the following question: "Was there anything about the position where Mr. Head was stuck or the location of the loader in the material it was stuck in that caused you to believe that he had violated the equipment abuse policy?"

[11] Assuming arguendo that the witness had personal knowledge about whether getting the loader stuck was likely to have resulted from equipment abuse, it is unclear how the witness's opinion about that would have been helpful to the jury in this case. The jury was fully capable of comparing the incident involving the loader with the standards in the equipment abuse policy and drawing its own conclusion. Accordingly, we conclude that the district judge properly sustained the objection to the question because an answer would not have been helpful to "the determination of a fact in issue."[45]

## B.   Jury Instructions

Head alleges that the district court erred in giving a "because of" or "because" instruction as to four of his claims: (1) the state discrimination claim; (2) the ADA discrimination claim; (3) the state retaliation claim; and (4) the ADA retaliation claim. To decide these claims, we must determine the causal standard for each claim and whether the jury instruc-

---

[42]*See SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001).

[43]*See Tritchler*, 358 F.3d at 1155.

[44]FED. R. EVID. 701.

[45]*Id.*

tions appropriately reflected that standard. At its core, the causation standard is a legal question; thus, we review it de novo.[46] We review the district court's formulation of jury instructions for abuse of discretion,[47] but error in jury instructions does not require reversal if the error was "more probably than not harmless."[48]

As to the state retaliation claim, the causal standard for retaliation claims under Oregon Revised Statute § 659A.109 is whether "the unlawful motive was a substantial and impermissible factor in the discharge decision."[49] As to the remaining jury instruction claims, we must determine what standard for causation the ADA requires and how to explain that standard to a jury.[50] We hold that the ADA causation standard is a motivating factor standard.[51] Furthermore, we hold that the use of the "because of" instruction was prejudicial in this case. The analysis below first explains how we determined

---

[46]*Costa*, 299 F.3d at 858.

[47]*Tritchler*, 358 F.3d at 1154.

[48]*Mockler v. Multnomah County*, 140 F.3d 808, 812 (9th Cir. 1998) (citing *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1337 (9th Cir. 1985)).

[49]*McPhail v. Milwaukie Lumber Co.*, 999 P.2d 1144, 1149 (Or. Ct. App. 2000). Unlike the Oregon state disability claim, retaliation claims under Oregon Revised Statute § 659A.109 are not within the sections to be construed in accordance with the ADA. *See* OR. REV. STAT. § 659A.139 (stating "ORS 659A.112 to 659A.139" are construed in accordance with the ADA).

[50]The causal standard under Oregon Revised Statute § 659A.112 (Employment discrimination against disabled persons), "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the [ADA]." OR. REV. STAT. § 659A.139. Consequently, our decision regarding causation under the ADA resolves the determination of causation for a discrimination claim under Oregon law.

[51]We hold that the ADA "motivating factor" standard for retaliation claims is a similar standard to Oregon's "substantial and impermissible factor" causation standard. *See McPhail*, 999 P.2d at 1149. Accordingly, the discussion below regarding the required jury instruction and prejudice in sections III.B.2 and 3 applies to the Oregon state law retaliation claim as well as the ADA-based claims.

this causation standard, then explains why the jury instruction in this case should have used the "motivating factor" language, and then why the instruction given was prejudicial.

### 1.  ADA's standard of causation

[12] Causation analysis under the ADA is really a question of whether the ADA's use of the causal language "because of,"[52] "by reason of,"[53] and "because"[54] means that discriminatory and retaliatory conduct is proscribed only if it was *solely* because of, *solely* by reason of, or *solely* because an employee was disabled or requested an accommodation. Although the Ninth Circuit has not answered this question, seven of our sister circuits have held that the ADA causation standard does not require a showing of sole cause.[55] The Eleventh Circuit in

---

[52]42 U.S.C. § 12112(a). Title I applies to the private sector and states that: "No covered entity shall discriminate against a qualified individual with a disability *because of* the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* (emphasis added).

[53]42 U.S.C. § 12132. Title II applies to the public sector and states that: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, *by reason of* such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* (emphasis added).

[54]42 U.S.C. § 12203(a). Title IV of the ADA precludes retaliation against employees who seek to enforce their statutory rights under the ADA. *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073 (11th Cir. 1996). Title IV states that: "No person shall discriminate against any individual *because* such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a) (emphasis added).

[55]*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999); *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033-34 (7th Cir. 1999); *McNely*,

*McNely v. Ocala Star-Banner Corp.*, an ADA case, thoroughly analyzed this question.

The *McNely* court analyzed the statutory language,[56] legislative history,[57] and Supreme Court precedent interpreting "because of" in Title VII cases.[58] It explained that "the 'because of' component of the ADA liability standard imposes no more restrictive standard than the ordinary, everyday meaning of the words would be understood to imply. In everyday usage, 'because of' conveys the idea of a factor that made a difference in the outcome."[59]

**[13]** The *McNely* court noted that the ADA liability provisions do not contain the word "solely" or any similar terms. It explained that, given the absence of that term from the statute, "unless we can discern a very good reason to read the restrictive term 'solely' into two statutory provisions where it is not found, this is a simple case."[60] The court declined to import the "solely" restriction from the Rehabilitation Act, explaining that "[a] liability standard that tolerates decisions that would not have been made in the absence of discrimination, but were nonetheless influenced by at least one other factor, does little to 'eliminate' discrimination; instead, it indulges it."[61] Thus, the court concluded that importing the

---

99 F.3d at 1076; *Katz v. City Metal Co.*, 87 F.3d 26, 33 (1st Cir. 1996); *Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir. 1996); *Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301 (8th Cir. 1995). *But see Hedrick v. W. Reserve Care Syst.*, 355 F.3d 444, 454 (6th Cir. 2004) (holding that ADA plaintiff must show that disability was sole reason for adverse employment action).

[56]*McNely*, 99 F.3d at 1073-74.

[57]*Id*. at 1074-75.

[58]*Id*. at 1075-76.

[59]*Id*. at 1077.

[60]*Id*. at 1073.

[61]*Id*. at 1074.

term "solely" would undermine the very purpose of the ADA: " 'the elimination of discrimination against individuals with disabilities.' "[62]

[14] Thus, on the basis of the plain language of the ADA, and with the support of seven other circuits, we conclude that "solely" is not the appropriate causal standard under any of the ADA's liability provisions. The next question is what that proper standard is. We conclude that a motivating factor standard is the appropriate standard for causation in the ADA context for the reasons discussed below.

[15] We agree with our sister circuits that a "motivating factor" standard is most consistent with the plain language of the statute and the purposes of the ADA.[63] Moreover, the "motivating factor" standard comports with our existing precedent.[64] For example, in *Hernandez* we characterized the burden as proving that "disability actually played *a* role in the employer's decisionmaking process and had a determinative influence on the outcome."[65] Similarly, in *Snead* we stated the causal requirement as demonstrating to the trier of fact that "a

---

[62]*Id.* (quoting 42 U.S.C. § 12101(b)(1)).

[63]*Parker*, 204 F.3d at 337 (explaining that removal of the word "solely" from the causation standard of the ADA, the broad purpose of the ADA, and the causation standards applicable to Title VII, "suggest[ ] forcefully that Congress intended the [ADA] to reach beyond the Rehabilitation Act to cover situations in which discrimination on the basis of disability is one factor, but not the only factor, motivating an adverse employment action"); *Baird*, 192 F.3d at 470; *Foster*, 168 F.3d at 1033; *Katz*, 87 F.3d at 33; *Buchanan*, 85 F.3d at 200; *Pedigo*, 60 F.3d at 1301. In *McNely*, the Eleventh Circuit described the "because of" standard as conveying in ordinary usage "the idea of a factor that made a difference in the outcome . . . [—] a 'but-for' liability standard." *McNely*, 99 F.3d at 1077.

[64]*See, e.g., Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001).

[65]*Hernandez*, 362 F.3d at 568 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)) (internal alterations and quotation marks omitted) (emphasis added).

discriminatory reason *more likely motivated* the employer."[66] Therefore, we hold that the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation — a motivating factor standard. Our next inquiry is how jury instructions must reflect this causation standard.

### 2.   Jury instructions required under the ADA

*Costa* explicates the proper approach to formulating jury instructions in an ADA case:

> Once at the trial stage, the plaintiff is required to put forward evidence of discrimination "because of" a protected characteristic. After hearing both parties' evidence, the district court must decide what legal conclusions the evidence could reasonably support and instruct the jury accordingly.[67]

The *Costa* court laid out two alternatives for the trial judge. This approach reflects the fact that although the statute uses "because of" language, the ADA plaintiff need not show more than that impermissible motives were a "motivating factor" in any adverse action. The approach also reflects the fact that the evidence in a particular case may not suggest more than one possible reason for the challenged action.

---

[66] *Snead*, 237 F.3d at 1094 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

[67] 299 F.3d at 856. *Costa*, though a Title VII case, applies equally in the ADA context. *Cf. Hernandez v. Hughes Missile Systs. Co.*, 362 F.3d 564, 568 (9th Cir. 2004) (drawing on Title VII precedent to set out plaintiff's burden in ADA case); *Snead v. Metro. Property & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (holding that Title VII analysis applies in ADA case). *See also Baird*, 192 F.3d at 470 (holding Title VII causation standard applicable under the ADA); *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033 (7th Cir. 1999) (same).

**[16]** Under the first alternative in *Costa*, if the judge determines that the only reasonable conclusion the jury could reach is that discriminatory animus is the sole reason for the challenged action or that discrimination played no role in the decision, the jury should be instructed to determine whether the challenged action was taken "because of" the prohibited reason.[68]

**[17]** The second alternative applies in a case in which the evidence could support a finding that discrimination is one of two or more reasons for the challenged decision, at least one of which may be legitimate. In that case the jury should be instructed to determine whether the discriminatory reason was "a motivating factor" in the challenged action.[69]

At issue in this case regarding Head's discrimination claims was why Glacier fired him — whether it did so because he violated the equipment policy, because Glacier perceived him as being disabled, or because of some combination of the two. At issue regarding Head's retaliation claims was whether Glacier fired him because he violated the equipment policy, because he requested a reasonable accommodation, or because of some combination of the two. There was evidence to support a conclusion that each of these reasons had a role in Head's discharge.

**[18]** Thus, a jury could have found that Head was fired for violating the equipment abuse policy, because of his perceived disability, or for both reasons. It was error therefore for the court to refuse to give the requested mixed-motive instruction.

---

[68]299 F.3d at 856.

[69] *Id.* at 856-57.

### 3.   Prejudice

The district court's use of "because of" and "because" jury instructions in this case "does not require reversal if the error was 'more probably than not harmless.' "[70] The harmless error standard requires error to be proven harmless more probably than not,[71] which in practical effect means that an error is prejudicial unless evidence more probably than not proves otherwise.

**[19]** As noted, a jury could have found that Head was fired for violating the equipment abuse policy, because of his perceived disability, or both. Under the correct causation standard, the second or third of these findings should have meant liability for Glacier. But the "because of" instruction given could have allowed a jury to conclude that Head needed to show sole causation and thus to deny liability for Glacier even though the jury had found that both reasons played a role in motivating Glacier's discharge of Head. Thus, the instructions given improperly favored Glacier.

**[20]** The record contains no indication that the jury's verdict was more likely based on the finding that Glacier's action was based solely on Head's performance. Thus, it is not possible to conclude that the error in instructions was more likely than not harmless to Head. Because the instructional error cannot be shown to be harmless, we vacate the jury verdict.

## IV.   CONCLUSION

We conclude that Head has alleged sufficient evidence to demonstrate a substantial impairment in the established major life activities of sleeping, interacting with others, and thinking. Moreover, Head has alleged sufficient evidence of a substantial impairment regarding reading and we conclude that

---

[70]*Mockler*, 140 F.3d at 812.

[71]*Id.*

reading is a major life activity. Therefore, we reverse the district court and remand for a determination on the merits of Head's claims based on disability and record of disability. The district court properly excluded lay witness testimony because it would not have been helpful to the jury. Finally, we adopt a "motivating factor" standard for causation in the ADA context and conclude that the use of "because of" and "because" instructions in this case was prejudicial. Therefore, we vacate the jury verdict and remand for further proceedings.

**REVERSED** and **REMANDED** in part, **AFFIRMED** in part. Each party shall bear its own costs on appeal.

---

T.G. NELSON, Circuit Judge, Specially Concurring:

I concur in the judgment and in all of the court's opinion except Note 2 and Part III.B.2. I disagree with the court's conclusion that the district court should choose between a "because of" instruction or a motivating factor instruction in ADA cases. That conclusion contradicts our holdings in Part III.B.1 and Part III.B.3. In addition, it inappropriately imports a Title VII standard that does not apply in the ADA context.

In Part III.B.1 we hold that "the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation — a motivating factor standard."[1] We also clearly state that " 'solely' is not the appropriate causal standard under any of the ADA's liability provisions."[2] Thus, a plaintiff in an ADA case is never required to show that impermissible animus was the *sole* cause of an adverse employment decision. The plaintiff need only show that such animus at least *partially* motivated the employer to make its adverse employment

---

[1]Majority Opinion at 7886.

[2]*Id.* at 7885.

decision. Consequently, any jury instruction that requires a plaintiff to show that an impermissible animus solely caused an adverse employment action misstates the law.

In Part III.B.3 we hold that the district court's use of "because of" and "because" jury instructions in this case was prejudicial because a jury may impermissibly infer a "sole" causation requirement from a "because of" instruction.[3] We recognize that "the 'because of' instruction given [by the district court] could have allowed a jury to conclude that Head needed to show sole causation and thus to deny liability for Glacier even though the jury had found that both reasons played a role in motivating Glacier's discharge of Head."[4] Because the "because of" jury instruction may have caused Head to have to prove sole causation, it misstated the law.

The majority's approach in Part III.B.2 directly contradicts the holdings described above. It would require the trial court to give a "because of" instruction if it "determines that the only reasonable conclusion the jury could reach is that discriminatory animus is the sole reason for the challenged action or that discrimination played no role in the decision."[5] As we hold in Part III.B.3, such an instruction would impermissibly allow jurors to infer a "sole" causation requirement.[6] As we hold in part III.B.1, a plaintiff is never required to establish that discriminatory animus solely caused an adverse employment decision. Thus, the majority's approach contradicts the rest of its opinion and mandates the use of a jury instruction the majority has itself found to be improper.[7]

---

[3]*Id.* at 7888.

[4]*Id.* at 7888.

[5]*Id.* at 7887.

[6]*See id.* at 7888 (acknowledging that a jury may infer a "sole" causation requirement from a "because of" instruction).

[7]*See White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002) ("Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading."). Majority Opinion at 7888.

The majority arrives at its internally contradictory opinion because it imports a standard borrowed from *Costa v. Desert Palace, Inc.*,[8] a Title VII case, that does not apply in the ADA context. In *Costa*, we explained that after hearing all the evidence, the district court must choose between a "because of" and "motivating factor" jury instruction.[9] It would choose the former if "the only reasonable conclusion a jury could reach is that discriminatory animus is the *sole* cause for the challenged employment action or that discrimination played *no* role at all in the employer's decisionmaking."[10] It would choose the latter if "the evidence could support a finding that discrimination is one of two or more reasons for the challenged decision, at least one of which may be legitimate."[11]

The choice of jury instructions makes sense in the Title VII context. However, it does not make sense to transfer Title VII's approach to the choice of jury instructions in an ADA case.[12] Differences in the language and interpretation of the two statutes requires a choice of jury instructions in the Title VII context and only one jury instruction in the ADA context: a motivating factor instruction. Although Title VII and the ADA both contain "because of" type language for liability,[13] Title VII contains additional statutory language about defenses. Most significantly, Title VII allows for a "same decision" defense in cases in which the plaintiff argues that discrimination was not the sole motivation of the employer's

---

[8]299 F.3d 838 (9th Cir. 2002), *aff'd* 539 U.S. 90 (2003).

[9]*Costa*, 299 F.3d at 856.

[10]*Id.* (emphasis in original).

[11]*Id.* at 857. Despite these differing jury instructions, we emphasized that regardless of the instruction given, plaintiff's ultimate burden under Title VII is to show an adverse employment decision "because of" discrimination. *Id.*

[12]Many aspects of the Title VII context do transfer to the ADA context. *See, e.g.*, *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

[13]*See* 42 U.S.C. §§ 2000e-2, 12112(a), 12132, 12203(a).

adverse action, but only a motivating factor.[14] In such cases, if the jury concludes that the employer would have taken the same adverse action even without the discriminatory reason, the employer's liability is severely curtailed.[15] Thus, a plaintiff's decision to establish discrimination as a sole cause or merely a motivating factor is a significant one in Title VII cases. Moreover, the language in Title VII drives *Costa*'s holding that the court must choose between two alternative jury instructions depending on the evidence the plaintiff presented.[16] There is no similar language in the ADA. The ADA does not provide for a "same decision" defense. Neither does it provide any mechanism for the reduction of damages depending on whether discriminatory animus motivated the employer's action in whole or in part. Finally, we hold today that plaintiff's need only ever show that discrimination is a motivating factor in an ADA case. Accordingly, the rationale for selecting between jury instructions in a Title VII case is absent in the ADA context.[17]

---

[14]42 U.S.C. § 2000e-5(g)(2)(B). This section provides:

On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court —

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

*Id.*

[15]*Id.*

[16]*Id.*

[17]Furthermore, in light of the fact that a plaintiff need only show that discriminatory animus partially motivated the challenged action, regardless of the evidence actually presented, it is a waste of scarce judicial resources to require district courts to make this unnecessary determination in an ADA case.

For these reasons, I cannot join in Note 2 and Part III.B.2 of the majority's opinion. Under our decision, only a "motivating factor" jury instruction is appropriate in an ADA case.