# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NAOMI WALTON,
　　　　　　*Plaintiff-Appellant,*

v.

U.S. MARSHALS SERVICE; MARC A.
FARMER, Chief, Judicial Protective
Services-Judicial Security
Division; U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
BENIGNO G. REYNA, Director,
United States Marshals Service;
ALBERTO R. GONZALES, Attorney
General,
　　　　　　*Defendants-Appellees.*

No. 05-17308

D.C. No.
CV-03-01460-SI

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
PETITION FOR
REHEARING
EN BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Yvonne Illston, District Judge, Presiding

Argued and Submitted
November 16, 2006—Portland, Oregon

Filed February 9, 2007
Amended June 26, 2007

Before: Alfred T. Goodwin, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

7643

**COUNSEL**

Edith J. Benay, San Francisco, California, for the plaintiff-appellant.

Eric Fleisig-Greene, United States Department of Justice, Washington, DC, for the defendant-appellee.

**ORDER**

The opinion filed on February 9, 2007 and published at 476 F.3d 723 is hereby AMENDED as follows:

On 476 F.3d at 731, following the heading reading "3. *Localizing Sound*" replace:

<<   Walton further alleges that the USMS regarded her as disabled in the major life activity of localizing sound. We decline to consider whether localizing sound could be an additional major life activity because Walton failed to raise this argument before the district court. *See Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1060 n.19 (9th Cir. 2005).   >>

with:

<<   Walton also alleges that the USMS regarded her as disabled because it regarded her as substantially limited in the activity of localizing sound.[1] In order to show that such a limitation is a disability within the meaning of the Acts, Walton must provide evidence that the ability to localize sound qualifies as a major life activity. *See Coons*, 383 F.3d at 885. We find that she has not.

" 'Major life activities' . . . refers to those activities that are of central importance to daily life." *Williams*, 534 U.S. at 197; *see also Fraser v. Goodale*, 342 F.3d 1032, 1039 (9th Cir. 2003) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998)). To determine whether a proposed activity is a major life activity, we begin with the illustrative list in the implementing regulations which describes major life activities as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Bragdon*, 524 U.S. at 638 (quoting 45 C.F.R. § 84.3(j)(2)(ii) (1997) and 28 C.F.R. § 41.31(b)(2) (1997)). Because "[t]he plain meaning of the word 'major' denotes comparative importance," we then compare the proposed

---

[1]Walton raised this argument in a supplemental brief filed with the district court after the close of briefing on USMS's motion for summary judgment. The district court indicated that it received and considered Walton's supplemental brief, but its order did not address Walton's additional argument. We consider it here. We observe that we may affirm the district court's grant of summary judgment on any ground supported by the record. *Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005).

activity with the major life activities enumerated in the regulations, noting that "the touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Id.* (quoting *Abbott v. Bragdon*, 107 F.3d 934, 939-40 (1st Cir. 1997)) (internal quotation marks omitted).

The "comparative importance" standard requires that a proposed activity must be of comparable significance as an enumerated major life activity in order to qualify as a major life activity. For example, in *Bragdon*, the Supreme Court held that "reproduction [is] a major life activity, since reproduction could not be regarded as any less important than working and learning." 524 U.S. at 639. *See also Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 684-85 (7th Cir. 2000) ("getting to and from work" is not of equal significance to enumerated major life activities and thus is not a major life activity; "rather . . . [it] is a sub-species of the activity of 'working' or of 'driving' ").

Walton provides no authority for her argument that the ability to localize sound is a major life activity. Instead, she claims that under our decision in *Head v. Glacier Northwest Inc.*, 413 F.3d 1053 (9th Cir. 2005), her experts' reports discussing the impact of the inability to localize sound on an individual's hearing should be considered evidence of comparative importance. Walton misreads *Head*. *Head* does not stand for the proposition that a proposed activity is a major life activity simply because it is "in some instances" necessary to the performance of an established major life activity. Such an expansive reading of "major life activity" would collapse into one the final two of the following three inquiries to determine the existence of a disability under our case law: "(1) we determine whether [the alleged impairment] is a physical impairment, (2) we identify the life activity on which [plaintiff] relies, and we determine whether this activity is a major life activity, and (3) we determine whether the impairment substantially limits the major life activity." *Fraser*, 342

F.3d at 1038. As the Second Circuit explained in *Reeves v. Johnson Controls World Services, Inc.*:

> An ADA plaintiff could considerably lessen the burden of making an individualized showing of a substantial limitation were he able to define the major life activity as narrowly as possible, with an eye toward conforming the definition to the particular facts of his own case. . . . Narrowing and diluting the definition of a major life activity, which in turn might lessen the plaintiff's burden of proving a substantial limitation, would undermine the role of the statute's "substantial limit[ation]" inquiry in ensuring that only impairments of some significance are protected by the ADA.

140 F.3d 144, 152 (2d Cir. 1988). Thus, consistent with controlling precedent, our observation in *Head* that a proposed activity may be important because it "is necessary in many instances to perform" an enumerated major life activity does not obviate the need to meet the ultimate standard that a proposed activity must be "of comparative importance, and . . . central to most people's daily lives" in order to be considered a major life activity. *Head*, 413 F.3d at 1062.

Under the proper standard, the evidence in the record is insufficient to support Walton's assertion that the ability to localize sound is itself a major life activity. For the reasons discussed in the preceding section, we do not give any evidentiary weight to Dr. Sweetow's report. Walton's only other expert report is that authored by Dr. Cook. In the light most favorable to Walton, Dr. Cook's report indicates that a complete inability to localize sound may severely impact how hearing is used in daily life. Dr. Cook's report does not, however, suggest that the ability to localize sound is comparable to "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" or that the ability to localize sound is itself central to an indi-

vidual's life. Thus, on this record, we are unable to conclude that auditory localization is of comparative importance to the enumerated major life activities, and Walton therefore cannot sustain a claim that she was regarded as disabled because of her inability to localize sound.   >>

With this amendment, the panel has voted to deny Appellant Naomi Walton's petition for rehearing. Judges Fisher and Smith have voted to deny the suggestion for rehearing en banc, and Judge Goodwin has recommended denying the suggestion for rehearing en banc.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it. Fed. R. App. P. 35.

The petition for rehearing and petition for rehearing en banc are DENIED.

Pursuant to General Order 5.3(a), subsequent petitions for rehearing or rehearing en banc may be filed concerning this amendment.

IT IS SO ORDERED.

---

**OPINION**

MILAN D. SMITH, JR., Circuit Judge:

Naomi Walton sued the U.S. Marshals Service ("USMS") under the Rehabilitation Act of 1973 alleging that the USMS unlawfully discharged her because of her hearing impairment. She appeals from the district court's grant of summary judgment in favor of the USMS, arguing that the district court erred in ruling that she failed to demonstrate a genuine issue of material fact concerning whether she was disabled within

the meaning of the Acts.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.	Background

Walton was employed by Akal Security, Inc. ("Akal") as a Court Security Officer ("CSO") at the United States District Court for the Northern District of California. Akal is a private contractor that provides CSOs at federal courthouses within the Ninth Circuit by contract with the USMS. The contract requires that Akal employees for CSO positions meet certain USMS physical requirements. Based on the USMS's determination that Walton did not meet the USMS's audiological standards, the USMS medically disqualified her from employment as a CSO and Akal terminated her employment.

In its agreement with Akal, the USMS requires CSOs to undergo annual physical examinations. The USMS's current CSO audiological standards were developed based upon a study by Dr. Richard Miller, Director of Law Enforcement Medical Programs for the Office of Federal Occupational Health. Dr. Miller's study identified twenty-nine job functions essential to the CSO position, one of which is the ability to determine the location and source of sound. The Judicial Conference of the United States adopted the conclusions of Dr. Miller's study and directed the USMS to implement a number of changes to the CSO medical standards.

In November 2001, as a part of an annual physical examination required by her employment contract, Walton underwent audiological testing by an Akal-designated physician. Dr. Louis Chelton, a medical review officer in the Office of

---

[1]Because "[t]he standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act," we refer to them jointly as "the Acts." *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

Federal Occupational Health, reviewed the results of Walton's test in order to assess her compliance with USMS standards. Based on Walton's test results, Dr. Chelton noted that Walton has a disparity between her two ears' ability to detect sound, and that this disparity impacts her ability to localize sound.

Consistent with USMS policy, Walton was given an opportunity to provide further test results or other information to support her qualification before the USMS made a final recommendation concerning her medical eligibility. Walton took this opportunity and underwent a second hearing test. Dr. Chelton reviewed the additional results and reported on a "Medical Review Form" that Walton was "[n]ot medically qualified to perform the essential functions of the job." The form reads, in relevant part:

> The following medical condition(s) poses a significant risk to the health and safety of yourself and/or others in the performance of essential job functions. Medical follow-up, if requested, and any reduction of duties are listed below. Send medical information to your employer.

> You have a significant hearing impairment according to the results of the tests provided by you from Gould Medical Foundation. According to the test results you have only one functioning ear. With only one functioning ear, you are unable to localize the direction of sound, an essential job function. Hearing aids may malfunction or become dislodged in critical situations. Your job requires the ability to detect where sound is coming from. Your inability to do so poses a significant risk to the health and safety of yourself, other law enforcement officers, and the public.

The USMS then notified Akal of Walton's disqualification, and Akal terminated Walton's employment.

In her Third Amended Complaint, Walton alleged that the USMS and various individuals and federal agencies terminated her employment in violation of the Rehabilitation Act, 29 U.S.C. § 701-796l, and, in the alternative, the Administrative Procedure Act, 5 U.S.C. § 701-706. The district court held that the USMS was a proper defendant under the Rehabilitation Act[2] and granted the USMS's motion for summary judgment on Walton's Rehabilitation Act claims, finding that Walton did not make a prima facie showing that she was disabled under the meaning of the Acts. Walton filed a timely appeal of the district court's decision.

## II.  Standard of Review

We review a district court's grant of summary judgment on a Rehabilitation Act claim de novo. *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). "Viewing the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences in her favor, we must determine whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact." *Id.* (quoting *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1187 (9th Cir. 2001)).

## III.  Discussion

To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability. *See Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058 (9th Cir. 2005). The Americans with Disabilities Act, whose standards of substantive liability are incorporated in the Rehabilitation Act, defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major

---

[2]The district court's decision that the USMS is a proper defendant in this case is not before this court and we express no opinion on the issue.

life activities of such individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment. 42 U.S.C. §12102(2); *Coons*, 383 F.3d at 884.

## A.   "Regarded As" Disabled

[1] Walton does not allege that she is actually disabled; rather she alleges that she is a person with a disability within the meaning of the Acts because she was "regarded as" disabled. The Equal Employment Opportunity Commission's regulations state that an individual who is "regarded as" disabled:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

> (3) Has none of the impairments defined in paragraph (h) (1) or (2) of this section[3] but is treated by a covered entity as having a substantially limiting impairment.

---

[3]The regulations define "Physical or mental impairment" as:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

29 C.F.R. § 1630.2(*l*). Assuming without deciding that the EEOC regulations are valid, the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), held that an employee may be "regarded as" disabled in one of two ways:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or

> (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

527 U.S. at 489. The Supreme Court in *Sutton* further instructed that: "In both cases, it is necessary that a covered entity entertain misperceptions about the individual —it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

**[2]** Following *Sutton*, this court requires that a plaintiff alleging a "regarded as" claim provide evidence of the employer's "misperception," or subjective belief that the plaintiff is substantially impaired. *See*, *e.g.*, *EEOC v. United Parcel Service, Inc.*, 306 F.3d 794, 805 (9th Cir. 2002). In *EEOC*, we noted the importance of the "employer's motivation[s]" and held that the district court "made no *finding* about what UPS actually regarded as the restriction, real or unreal, in claimants' vision that substantially limits all of them in the major life activity of seeing." *Id.* (emphasis in original). Similarly, in *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516 (1999), the Supreme Court emphasized that a plaintiff must show that her employer regards her as substantially limited in a major life activity and not just unable to meet a particular job performance standard. *See id.* at 524.

**[3]** A plaintiff need not make this showing—that an employer subjectively believed that the plaintiff is substan-

tially limited in a major life activity as the result of an impairment—through direct evidence. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1229 n.6 (9th Cir. 2001). However, because "a person cannot be *regarded* as disabled unless the deficiency that the person is regarded as having is a *disability*," an employee who is only able to show that her employer regarded her as impaired must also provide evidence that the imputed impairment is objectively substantially limiting. *See EEOC*, 306 F.3d at 801 (emphasis in original). *See also Thompson v. Holy Family*, 121 F.3d 537, 540-41 (9th Cir. 1997) (defendant's belief that plaintiff was incapable of lifting 25 pounds is insufficient evidence that the defendant regarded plaintiff as disabled because the court "noted previously that a 25-pound restriction does not amount to a substantial limitation on the ability to lift").

**[4]** Accordingly, we hold that in order to state a "regarded as" claim a plaintiff must establish that the employer believes that the plaintiff has some impairment, and provide evidence that the employer subjectively believes that the plaintiff is substantially limited in a major life activity. If the plaintiff does not have direct evidence of the employer's subjective belief that the plaintiff is substantially limited in a major life activity, the plaintiff must further provide evidence that the impairment imputed to the plaintiff is, objectively, a substantially limiting impairment. *See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir. 2001) (affirming district court's judgment for defendant on plaintiff's "regarded as" claim because "there is no specific evidence that [employer] viewed her as substantially limited" and "[employee's] restrictions did not rise to the level of substantial limitation").

Walton alleges that she was regarded as substantially limited in the major life activities of (1) hearing, (2) working, and (3) localizing sound. Walton fails to raise a genuine issue of material fact that the USMS regarded her as disabled with respect to any of these activities.

###### 1.   *The Major Life Activity of Hearing*

According to EEOC regulations, hearing is a major life activity. 29 C.F.R. § 1630.2(i). The district court found that Walton did not raise a genuine issue of material fact that the USMS subjectively believed her hearing to be substantially limited, or that the inability to localize sound is an objective and substantial limitation on the major life activity of hearing. We agree.

###### a.   Subjective Belief of Substantial Limitation

**[5]** A substantial limitation on the major life activity of hearing is a severe restriction on the use of an individual's hearing compared to how unimpaired individuals normally use their hearing in daily life. *See Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184, 200-01 (2002) (stating the rule in terms of the major life activity of performing manual tasks); *EEOC*, 306 F.3d at 802 (same regarding the major life activity of seeing). Walton primarily argues that Dr. Chelton's report disqualifying her from employment as a CSO raises a genuine issue of material fact that the USMS believed she was substantially limited in the major life activity of hearing.

**[6]** Walton's argument that her disqualification under the USMS's hearing standards is itself sufficient evidence that the USMS regarded her as disabled in a major life activity fails. In *EEOC*, we held that an allegation that an employer which requires its employees to meet certain vision standards does not establish a claim that the employer regards one who fails to meet the vision requirement as being substantially limited in the major life activities of working or seeing. 306 F.3d at 804 (citing *Sutton*, 527 U.S. at 490). Standing alone, Walton's failure to meet the USMS hearing standards does not raise a genuine issue of material fact that the USMS regarded her as disabled.

**[7]** The statements in Dr. Chelton's report are also insufficient to constitute direct evidence of the USMS's subjective

belief that Walton was substantially limited in the major life activity of hearing. Construed in the light most favorable to Walton, Dr. Chelton's statements that: "you are unable to localize sound," "you have only one functioning ear," and "[y]our inability to [localize sound] poses a significant risk to the health and safety of yourself, other law enforcement officers and the public," is evidence of his belief that Walton could not safely perform her job. However, because Dr. Chelton's letter does not express an opinion on whether the USMS regarded Walton's hearing impairment as substantially limiting in a major life activity, it does not follow that the USMS regarded her as disabled. *See EEOC*, 306 F.3d at 806 (citing *Thompson*, 121 F.3d at 541).

### b.   Objective Substantial Limitations

**[8]** Since Walton failed to provide direct evidence that USMS regarded her as substantially limited in a major life activity because of her hearing impairment, Walton must show that the inability to localize sound is an impairment that substantially limits the major life activity of hearing. *Thompson*, 121 F.3d at 541 ("[a]s with real impairments, . . . a perceived impairment must be substantially limiting and significant"). Attempting to make this showing, Walton relies on a report by her expert, Dr. Robert Sweetow, and on a report by Dr. Lynn Cook, a consulting audiologist in the development of the USMS hearing standards.

**[9]** Walton argues that the following paragraph in Dr. Sweetow's expert report raises a genuine issue of material fact that the inability to localize sound is an impairment that substantially limits the major life activity of hearing:

> Dr. Chelton states the plaintiff is "unable to localize the direction of sound." The ability to localize sound is ". . . essential to the condition or manner under which an individuals [sic] can . . ." use the sense of hearing. Thus being able to localize sound severely/

significantly restricts one's hearing as compared to
how unimpaired people normally hear in everyday
life.

(Ellipses in original). This paragraph is insufficient to raise a
genuine issue of material fact. In this circuit, "[e]xpert opin-
ion is admissible and may defeat summary judgment if it
appears the affiant is competent to give an expert opinion and
the factual basis for the opinion is stated in the affidavit, even
though the underlying factual details and reasoning upon
which the opinion is based are not." *Bulthuis v. Rexall Corp.*,
789 F.2d 1315, 1318 (9th Cir. 1985) (per curiam). Dr. Swee-
tow does not state a factual basis for his opinion; the conclu-
sion appears to be drawn from the second sentence, but the
second sentence references no facts and instead contains an
unattributed quote. Dr. Sweetow's conclusory report fails to
raise a genuine issue of material fact that the inability to local-
ize sound is an impairment that substantially limits the major
life activity of hearing. *See also Broussard v. Univ. of Cal.,
at Berkeley*, 192 F.3d 1252, 1258-59 (9th Cir. 1999) (finding
report by plaintiff's vocational rehabilitation specialist that
"did not compare the jobs [plaintiff] could do before and after
the onset of her [disability]," and did not identify the "time
periods he was analyzing" to be "the type of conclusory alle-
gation which this court found insufficient to withstand the
motion for summary judgment in *Thompson*").

Walton's only other evidence that the inability to localize
sound is substantially limiting is a draft report prepared by Dr.
Lynn Cook for the United States Immigration and Naturaliza-
tion Service. In a section titled "Why is Auditory Localization
Important?" Cook states that auditory localization is neces-
sary for the performance of certain activities. Viewed in the
light most favorable to Walton, Dr. Cook's report indicates
that, unlike a mere difficulty with localizing sound, a com-
plete inability to localize sound may severely impact how
hearing is used in daily life by precluding activities such as
locating other people, pinpointing the direction of a sound of

interest, and identifying if footsteps are retreating or approaching.

However, Dr. Cook's report also discusses compensatory measures, which "must be taken into account in judging whether an individual possesses a disability." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999) (citing *Sutton*, 527 U.S. at 482). In stating that "visual localization is generally just as accurate" as auditory localization, Dr. Cook's report opines that the compensatory measure of "visual localization" mitigates the effects of an inability to localize sound. Since there is "no principled basis for distinguishing between [mitigating] measures undertaken with artificial aids, like medications and devices, and measures undertaken, whether consciously or not, with the body's own systems," *Albertson's*, 527 U.S. at 565-66, we view the inability to localize sound as being mitigated by visual localization.

**[10]** Dr. Cook's report states the only disadvantages of relying on visual localization apparent from the record and Walton does not provide any further evidence on this issue. Dr. Cook states that mitigating the effects of the inability to localize sound with visual localization has only minor drawbacks: it "is not nearly as efficient (quick) as auditory localization" and it "assumes that the source of the sound can be visualized, which is often not possible in low-light environments, when the source is visually obscured by other objects, or when the source is not visually apparent (as in the bank of radios above)." Walton relies solely on Dr. Cook's report, and presents no contrary evidence in the record that auditory localization, as mitigated by visual localization, is an objectively severe restriction on the use of an individual's hearing compared to how unimpaired individuals normally use their hearing in daily life. On this basis, no reasonable trier of fact could find that the inability to localize sound, as characterized here, is in fact substantially limiting.

**[11]** Walton has not raised a genuine issue of material fact that the impairment imputed to her is in fact substantially lim-

iting, and we therefore affirm the district court's finding that Walton was not regarded as disabled with respect to the major life activity of hearing.

### 2. *Working*

**[12]** EEOC regulations specify that a person is "substantially limited" in the major life activity of working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). An allegation that the employer regards the impairment as precluding the employee from a single, particular position is insufficient to support a claim that the employer regards the employee as having a substantially limiting impairment. *See Murphy,* 527 U.S. at 523.

**[13]** Walton raises insufficient evidence to support her argument that the USMS regarded her as substantially limited in the major life activity of working. In *Thornton*, we held that a plaintiff alleging substantial limitation in the major life activity of working "must present specific evidence about relevant labor markets to defeat summary judgment" and "identify what requirements posed by the class of . . . jobs . . . were problematic in light of the limitations imposed on her." 261 F.3d at 795-96 (citation omitted) (ellipses in original). Walton does not meet the evidentiary standard set out in *Thornton* because she relies solely on Dr. Chelton's letter, Dr. Sweetow's expert report and Dr. Cook's report on auditory localization, none of which expresses any opinion about relevant labor markets or Walton's particular training, knowledge, skills or abilities. Accordingly, we affirm the district court's holding that Walton failed to raise a genuine issue of material fact that she was substantially limited in the major life activity of working.

### 3.  *Localizing Sound*

Walton also alleges that the USMS regarded her as disabled because it regarded her as substantially limited in the activity of localizing sound.[4] In order to show that such a limitation is a disability within the meaning of the Acts, Walton must provide evidence that the ability to localize sound qualifies as a major life activity. *See Coons*, 383 F.3d at 885. We find that she has not.

" 'Major life activities' . . . refers to those activities that are of central importance to daily life." *Williams*, 534 U.S. at 197; *see also Fraser v. Goodale*, 342 F.3d 1032, 1039 (9th Cir. 2003) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998)). To determine whether a proposed activity is a major life activity, we begin with the illustrative list in the implementing regulations which describes major life activities as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Bragdon*, 524 U.S. at 638 (quoting 45 C.F.R. § 84.3(j)(2)(ii) (1997) and 28 C.F.R. § 41.31(b)(2) (1997)). Because "[t]he plain meaning of the word 'major' denotes comparative importance," we then compare the proposed activity with the major life activities enumerated in the regulations, noting that "the touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Id.* (quoting *Abbott v. Bragdon*, 107 F.3d 934, 939-40 (1st Cir. 1997)) (internal quotation marks omitted).

---

[4]Walton raised this argument in a supplemental brief filed with the district court after the close of briefing on USMS's motion for summary judgment. The district court indicated that it received and considered Walton's supplemental brief, but its order did not address Walton's additional argument. We consider it here. We observe that we may affirm the district court's grant of summary judgment on any ground supported by the record. *Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005).

The "comparative importance" standard requires that a proposed activity must be of comparable significance as an enumerated major life activity in order to qualify as a major life activity. For example, in *Bragdon*, the Supreme Court held that "reproduction [is] a major life activity, since reproduction could not be regarded as any less important than working and learning." 524 U.S. at 639. *See also Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 684-85 (7th Cir. 2000) ("getting to and from work" is not of equal significance to enumerated major life activities and thus is not a major life activity; "rather . . . [it] is a sub-species of the activity of 'working' or of 'driving' ").

Walton provides no authority for her argument that the ability to localize sound is a major life activity. Instead, she claims that under our decision in *Head v. Glacier Northwest Inc.*, 413 F.3d 1053 (9th Cir. 2005), her experts' reports discussing the impact of the inability to localize sound on an individual's hearing should be considered evidence of comparative importance. Walton misreads *Head*. *Head* does not stand for the proposition that a proposed activity is a major life activity simply because it is "in some instances" necessary to the performance of an established major life activity. Such an expansive reading of "major life activity" would collapse into one the final two of the following three inquiries to determine the existence of a disability under our case law: "(1) we determine whether [the alleged impairment] is a physical impairment, (2) we identify the life activity on which [plaintiff] relies, and we determine whether this activity is a major life activity, and (3) we determine whether the impairment substantially limits the major life activity." *Fraser*, 342 F.3d at 1038. As the Second Circuit explained in *Reeves v. Johnson Controls World Services, Inc.*:

> An ADA plaintiff could considerably lessen the burden of making an individualized showing of a substantial limitation were he able to define the major life activity as narrowly as possible, with an eye

> toward conforming the definition to the particular facts of his own case. . . . Narrowing and diluting the definition of a major life activity, which in turn might lessen the plaintiff's burden of proving a substantial limitation, would undermine the role of the statute's "substantial limit[ation]" inquiry in ensuring that only impairments of some significance are protected by the ADA.

140 F.3d 144, 152 (2d Cir. 1988). Thus, consistent with controlling precedent, our observation in *Head* that a proposed activity may be important because it "is necessary in many instances to perform" an enumerated major life activity does not obviate the need to meet the ultimate standard that a proposed activity must be "of comparative importance, and . . . central to most people's daily lives" in order to be considered a major life activity. *Head*, 413 F.3d at 1062.

**[14]** Under the proper standard, the evidence in the record is insufficient to support Walton's assertion that the ability to localize sound is itself a major life activity. For the reasons discussed in the preceding section, we do not give any evidentiary weight to Dr. Sweetow's report. Walton's only other expert report is that authored by Dr. Cook. In the light most favorable to Walton, Dr. Cook's report indicates that a complete inability to localize sound may severely impact how hearing is used in daily life. Dr. Cook's report does not, however, suggest that the ability to localize sound is comparable to "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" or that the ability to localize sound is itself central to an individual's life. Thus, on this record, we are unable to conclude that auditory localization is of comparative importance to the enumerated major life activities, and Walton therefore cannot sustain a claim that she was regarded as disabled because of her inability to localize sound.

## B.   Record of Impairment

**[15]** Walton also alleges that she is disabled on the basis of having a record of impairment as defined in 42 U.S.C. § 12102(2)(B). Implementing regulations explain that having a "record" of a disability means either having a history of, or having been misclassified as having, a substantially limiting impairment. 29 C.F.R. § 1630.2(k). *See also Coons*, 383 F.3d at 886 (doctor's letter describing stress-related physical ailments did not constitute such a record because none of the treated impairments substantially limited any major life activity); *Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1169 (1st Cir. 2002) (plaintiff's long and documented record of alcoholism did not establish a disability because the record did not show that plaintiff's alcoholism "significantly interfered with a major life activity").

**[16]** Walton argues that Dr. Chelton's two reports regarding her USMS test results constitute a medical record of having only one functioning ear and being unable to localize sound. For the reasons stated above, Walton has failed to raise a genuine issue of material fact that this impairment is a substantially limiting impairment; thus, any record of this impairment would not meet the requirements of 29 C.F.R. § 1630.2(k).

## C.   Remaining Claims

**[17]** Because Walton is not a person with a disability as defined by the Acts, Walton's claims that the USMS discriminated against her based on disability fail as a matter of law. *See Coons*, 383 F.3d at 886. We therefore affirm the district court's decision to grant summary judgment in favor of the USMS on Walton's remaining claims.

## IV.   Conclusion

We conclude that Walton cannot demonstrate she is disabled within the meaning of the Acts, and we affirm the dis-

trict court's grant of summary judgment to the USMS.

**AFFIRMED**.