**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**



| | |
|---|---|
| CAROL BROWN, | No. 10-55023 |
| Plaintiff-Appellant, | D.C. No. 2:08-cv-03095-R-MAN |
| v. | |
| JOHN E. POTTER, Postmaster General, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Manuel Real, District Judge, Presiding

Argued and Submitted October 12, 2011
Pasadena, California

Before: LEAVY and WARDLAW, Circuit Judges, and SESSIONS, District
Judge.**

  Carol Brown sues the Postmaster General of the United States (the "Postal

Service") in an employment discrimination action arising under the Rehabilitation

---

  *  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

  **  The Honorable William K. Sessions III, District Judge, United States
District Court for the District of Vermont, sitting by designation.

Act of 1973, 29 U.S.C. §§ 701 *et seq*. She asserts three claims: (1) disability discrimination, under 29 U.S.C. § 794(d); (2) retaliation, under 29 U.S.C. § 791(g); and (3) interference, coercion and intimidation, also under 29 U.S.C. § 791(g). Disposing of competing discovery motions, the district court ruled against Brown on her motions to compel production of witness phone numbers and addresses, to strike the Postal Service's medical experts, and for a protective order against an independent medical exam of Brown and release of her full medical records. It granted the Postal Service's motion for summary judgment, dismissing Brown's complaint with prejudice and awarding costs to the Postal Service.

Brown appeals both the grant of summary judgment and the denial of her discovery motions and asks that we reassign this case to a different judge on remand. Finding that issues of material fact suitable for trial remain on the merits of Brown's disability discrimination and retaliation claims, we reverse the district court's grant of summary judgment on those issues. Because neither the Postal Service nor the district court addressed Ms. Brown's claim for interference, coercion and intimidation, we reverse summary judgment as to it as well. Finally, we affirm the district court's discovery rulings and direct that the case be assigned to a different judge on remand.

## I. SUMMARY JUDGMENT:

We review the district court's summary judgment ruling de novo. *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) (internal citation omitted). The court must treat "the evidence in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in her favor." *Id.*[1] We must determine if the district court applied the proper substantive law and whether there remain any genuine issues of material fact unresolved. *Id.*

### A. Disability Discrimination

Brown first alleges that the Postal Service discriminated against her because of her disabilities, under Section 504(d) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(d). To make out such a claim, Brown must demonstrate that: (1) she is disabled; (2) she is "otherwise qualified for employment;" and (3) she "suffered discrimination because of her disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (citation omitted).

An individual who "has a physical or mental impairment that substantially limits one or more of the individual's major life activities," qualifies as disabled.

---

[1] Brown argues that much of the evidence relied upon by the Postal Service in its motion for summary judgment was inadmissable under Fed. R. Civ. P. 56(c)(4). We need not evaluate those contentions here because we find, even assuming all the disputed evidence is admissible, that the Postal Service failed to carry its burden for summary judgment on any of Brown's three claims.

3

*Coons*, 383 F.3d at 884 (citing 42 U.S.C. § 12102).[2]  This definition should be

"construed in favor of broad coverage of individuals."  42 U.S.C. § 12102(4)(A).

A plaintiff's testimony or affidavit alone may establish a genuine issue as to a

material fact relating to disability status if it is not "merely self-serving" and

"contain[s] sufficient detail to convey the existence of an impairment."  *Head v.*

*Glacier Northwest Inc.*, 413 F.3d 1053, 1058-59 (9th Cir. 2005).  Ms. Brown's

disability status is at least a disputed issue of material fact for trial.  Unlike the

average person, Ms. Brown is in constant and agonizing pain and has difficulty

standing or sitting for extended periods, climbing or descending stairs, raising her

arms, walking, stooping, and sleeping.  Her physical conditions thus may

substantially limit, at the very least, the major life activities of sleeping, walking,

standing, lifting, and bending.  *See* 42 U.S.C. § 12102(2)(A).

To meet the second prong of the discrimination test, Ms. Brown must show

she is "otherwise qualified for employment."  *Walton*, 492 F.3d at 1004.  In other

words, she must be someone "who, with or without reasonable accommodation,

can perform the *essential functions* of the employment position that such individual

---

[2]    We find it unnecessary to reach whether Ms. Brown might also be
disabled under the Rehabilitation Act because she either "has a record of such an
impairment . . . or . . . is regarded as having such an impairment."  *Coons*, 383 F.3d
at 884.

4

holds or desires." 42 U.S.C. § 12111(8) (emphasis added). Even when a disabled employee cannot perform the essential functions of her job unassisted, she can still be qualified for the position if she could accomplish its essential functions "with . . . reasonable accommodation." *Id.* Reasonable accommodations include "reassignment to a vacant position," as well as modifications made to the work environment and schedule of the employee's current job. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(1)-(2). A necessary component of reasonable accommodation is an interactive, open, and ongoing process of dialogue between the employer and employee to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111 (9th Cir. 2000) (en banc), *vacated on other grounds*, 535 U.S. 391 (2002); *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1137-38 (9th Cir. 2001); 29 C.F.R. § 1630.2(o)(3).

The Postal Service maintains that Brown could not perform the essential functions of the Window Clerk position, which, by the Postal Service's description, include standing for eight hours a day and active use of the hands, back and legs in handling and lifting large volumes of mail. Regardless of whether that is true, the Postal Service was obligated to engage Ms. Brown in an interactive process to discover reasonable accommodations that would allow her

5

to accomplish the essential functions of her current job or another one. The Postal Service argues it in fact conducted a painstaking interactive process from 2005, when Brown arrived at the Bellflower Post Office ("Bellflower"), until 2009, when it could no longer find her work and put her on inactive duty.

We find, however, a contested issue of material fact as to whether that process was reasonable. Brown had worked successfully with accommodations at the Marina del Rey Mail Processing Station ("Marina") for nineteen years. But from nearly the start of her tenure at Bellflower, she claims she was met with hostility and derision from its Postmaster, John Puskas and her supervisor, Charles Kuang. She provided her supervisors with doctors' orders containing her work restrictions and requirements for a specialized chair, but felt her requests for accommodation were ignored. Forced to work beyond her medical restrictions, she asserts her physical condition only deteriorated. Rather than finding a permanent arrangement for her at Bellflower, her supervisors assigned her to the distant Santa Ana postal facility ("Santa Ana"), and ultimately removed her from the workforce entirely. That raises at least a triable question of material fact as to whether Brown was a qualified employee who, if appropriately accommodated, could have contributed valuable work to the Postal Service.

6

The final prong requires proof that the plaintiff "suffered discrimination because of her disability." *Walton*, 492 F.3d at 1005. The Rehabilitation Act prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . discharge . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Brown's complaint alleges the Postal Service committed discrimination in violation of 42 U.S.C. § 12112(b)(5)(A). That provision holds that an employer is liable for disability discrimination if it fails to make a reasonable accommodation to an otherwise qualified employee and cannot "demonstrate that the accommodation would impose an undue hardship on the operation of the business." *See also Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006).

The Supreme Court has approved a multi-step burden shifting analysis in determining what potential accommodations are reasonable and which rise to the level of an undue hardship at the summary judgment stage. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). Under that approach, a plaintiff must first show that the accommodation "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *Id.* The burden then shifts to the defendant to demonstrate the accommodation would pose an undue hardship in the case at hand. *Id.* Here, Brown met the initial burden of raising potential reasonable accommodations by

7

submitting doctors' orders and a letter outlining alternative jobs to her supervisors.  While the Postal Service nonetheless contends that there was no work suitable for Brown at Bellflower, it does not allege specific factors indicating that accommodating her would pose an "undue hardship."  Since the Postal Service stopped searching for work for Brown and removed her from active duty, there exists a genuine issue for trial as to whether it thereby discriminated against her under 42 U.S.C. § 12112(b)(5)(A).  As such, we conclude that the Postal Service was not entitled to summary judgment on Brown's discrimination claim.

## B.  Retaliation

Brown's second count alleges the Postal Service unlawfully retaliated against her for enforcing her rights, violating Section 501 of the Rehabilitation Act.  29 U.S.C. § 791(g) (Section 501 incorporates the ADA's retaliation provision, 42 U.S.C. § 12203(a).  *See Coons*, 383 F.3d at 887.)  To assert a prima facie retaliation case, the plaintiff must establish: "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two."  *Coons*, 383 F.3d at 887 (citation omitted).  After a plaintiff has alleged a prima facie case, the burden shifts to the defendant to "present legitimate reasons for the adverse employment action."  *Id.*  If the employer can counter with legitimate

reasons for the adverse employment action, the plaintiff must "demonstrate[ ] a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Id.* Ms. Brown engaged in the protected activities of filing six EEO complaints and initiating this action in district court. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) ("Pursuing one's rights under the ADA constitutes a protected activity.") The Postal Service argues that Brown failed to demonstrate either that she suffered an "adverse employment action," or that she alleged a demonstrable link between the complaints she lodged and any adverse employment actions she did endure.

An act is an "adverse employment action" if it is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (internal citations omitted). Our circuit defines that term "broadly," and examples could include "transfers of job duties," "transfer to another job [even] of the same pay and status," "changes in work schedules," *Ray*, 217 F.3d at 1240-43 (internal citation omitted), "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion," *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (internal citations omitted). Merely "declining to hold a job

9

open" or "badmouthing an employee outside of the job reference context" does not reach that level. *Id.* at 928-29. The Postal Service contends that the only arguably adverse employment action it took against Brown was placing her on inactive status, and it asserts that Ms. Brown did not exhaust that claim when she failed to include it in any of her EEO complaints.

We disagree with the Postal Service both on exhaustion and that removal to inactive status was the only arguably adverse employment action it took against Ms. Brown. While Brown did not file an EEO complaint after her demotion, her claim on that score is "like or reasonably related to" her previous EEO complaints, *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (internal citations omitted), including complaints she "was being set up for a determination that the Postal Service had no work available for her."[3] Moreover, Ms. Brown highlighted other

---

[3]     Filing an EEO complaint, or at least meeting with an EEO counselor to resolve a dispute, is required to exhaust administrative remedies before commencing Rehabilitation Act litigation. *Leong*, 347 F.3d at 1121-22. "[S]ubstantial compliance" with that requirement "is a jurisdictional prerequisite" to the district court's review. *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). Still, the district court will have jurisdiction both over charges made explicit in EEO complaints as well as "any charges of discrimination that are like or reasonably related to" or that "are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong*, 347 F.3d at 1122 (internal citations omitted). We construe the plaintiff's claims with the "utmost liberality in her favor" in deciding whether they are exhausted. *Id.*

10

potentially adverse employment actions the Postal Service took against her. Her supervisors ignored her requests for job responsibilities and a chair tailored to her medical restrictions, worsening her physical pain and creating a challenging work environment. When she was unable to perform adequately in that setting, her supervisors reduced her responsibilities and decreased her workload. In 2007, when the parties met to discuss what work she could perform, her supervisors apparently ignored her letter and later sought her reassignment to Santa Ana. In Brown's view, the transfer to Santa Ana was punitive. At Santa Ana, she had to work a late-night shift and make a painful daily commute. After returning to Bellflower, she was isolated in a separate room from co-workers and saw her responsibilities diminish. These acts, viewed in the light most favorable to Brown, appear to be an effort to stifle and marginalize her by placing her in ever more obscure and limited positions. They satisfy Brown's initial burden to show the Postal Service engaged in adverse employment actions against her.

The final element of the prima facie case that Ms. Brown must prove is a causal link between her protected acts and the adverse employment actions that ensued. There is no direct evidence in the record that the Postal Service's adverse employment actions were in reaction to her complaints, but temporal proximity alone can give rise to an inference of causality, *Barnett*, 228 F.3d at 1121. The

11

Supreme Court has made clear that proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, Ms. Brown filed six EEO complaints and initiated a federal suit during the less than four-year period in which she actively worked at Bellflower and Santa Ana and in which she was subject to adverse employment actions. She filed her second amended district court complaint on January 22, 2009, approximately five months before she was removed from active duty. These events do not follow directly on each other's heels, but are closely enough linked to suggest a causal connection. Brown has established a prima facie case of retaliation.

The burden then shifts to the Postal Service to produce a legitimate reason for its adverse actions. The Postal Service argues that the changes in Ms. Brown's job responsibilities were part of the process of interactive accommodation. As discussed above, the interactive process of accommodation is not only legitimate, but a required component of the Rehabilitation Act.

As such, the final burden stands with Brown to show that the "legitimate reason" offered by the Postal Service is solely a pretext. Brown creates a genuine, material issue on this fact in two ways. First, she argues that what the Postal Service views as accommodation she sees as discrimination. As we described in relation to Brown's discrimination claim, a genuine issue of material fact exists as

12

to how the actions her supervisors took ought to be viewed.  Secondly, she offers

evidence of the Postal Service's retaliatory intent.  The declarations submitted by

union stewards Perez and Macias document Postmaster Puskas's and supervisor

Kuang's references to Ms. Brown as "half an employee."[4]  Brown further contends

that Mr. Kuang and others yelled at her when she presented her concerns to them.

Having satisfied the elements of the claim, Brown's complaint should survive

summary judgment as to retaliation.

## C.  Interference, Coercion and Intimidation

We reverse summary judgment on Brown's interference, coercion and

intimidation claim and direct the district court to properly consider it on remand.

As Brown flagged both during summary judgment proceedings below and on

appeal, the Postal Service failed to address this claim in its motion for summary

judgment or supporting memorandum of points and authorities.  Nor did the

district court discuss it when dismissing Brown's complaint.  Since we do not

---

[4]  The Postal Service contends these statements are inadmissible hearsay and thus the court cannot rely on them in summary judgment analysis.  However, they should qualify as admissible nonhearsay admissions by a party-opponent's agent or servant.  Fed. R. Evid. 802(d)(2)(D); *Sea-Land Service, Inc. v. Lozen Int'l, LLC.*,  285 F.3d 808, 821 (9th Cir. 2002).

13

review issues raised for the first time on appeal, *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999), a reversal and remand is appropriate.

## II. DISCOVERY MOTIONS

Brown raises several objections to the district court's handling of discovery motions filed by both parties. Review of discovery rulings is for abuse of discretion. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1112 (9th Cir. 2001). We will not disturb the district court's judgment whether to "permit or deny discovery" except "upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation and quotation omitted). Prejudice arises "if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). We find that Brown has not met her burden of demonstrating "actual and substantial prejudice," and therefore affirm the district court's discovery rulings.

## III.  REASSIGNMENT ON REMAND

Finally, Brown requests reassignment to a new judge on remand.  We grant that request and "exercise [our] supervisory power under 28 U.S.C. § 2106 to reassign this case to a different district court judge on remand."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 372 (9th Cir. 2005).

## IV.  CONCLUSION

We therefore reverse the grant of the summary judgment, affirm the rulings on the discovery motions, and remand to the Clerk for the United States District Court for the Central District of California to reassign this case to a different district court judge.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED AND REASSIGNED.**

**Each party shall bear its own costs.**

15