UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BARBARA RADER,<br><br>         Plaintiff - Appellant,<br><br>  v.<br><br>JANET A. NAPOLITANO, Secretary of the U.S. Department of Homeland Security,<br><br>         Defendant - Appellee. | No. 11-56492<br><br>D.C. No. 2:10-cv-04697-JAK-FMO<br>Central District of California, Los Angeles<br><br><br>ORDER |

Before: KOZINSKI, Chief Judge, and GOULD and N.R. SMITH, Circuit Judges.


The prior memorandum disposition filed on June 17, 2013 is hereby amended concurrent with the filing of the amended disposition today. The partial dissent was not amended.

With these amendments, Chief Judge Kozinski and Judge N.R. Smith have voted to deny the petition for rehearing en banc. Judge Gould has voted to grant the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc is DENIED. No further petitions for rehearing or rehearing en banc may be filed in response to the amended disposition.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BARBARA RADER, | No. 11-56492 |
| Plaintiff - Appellant, | |
| v. | D.C. No. : 2:10-cv-04697-JAK-FMO |
| JANET A. NAPOLITANO, Secretary of the U.S. Department of Homeland Security, | AMENDED MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted June 3, 2013
Pasadena, California

Before: KOZINSKI, Chief Judge; GOULD and N.R. SMITH, Circuit Judges.

1. Rader failed to make out a prima facie case of sexual harassment. Rader presents no evidence in support of a quid pro quo theory that she or anyone else was ever asked to provide sexual favors. Rader's sole allegation is that, as her supervisor escorted her to receive her termination letter, he said, "You should have

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

f***ed me." The offensive remark cannot establish quid pro quo because Rader provides no evidence that her supervisor sought sexual consideration from her; without evidence that she had the opportunity to reject his advances, there can be no quid pro quo inference. *See Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1173 (9th Cir. 2003). Rader's inference is based upon speculation and cannot create a triable issue of material fact. *See Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003). This "isolated incident[]" (though an offensive comment), spoken after the decision to terminate Rader had already been made, did not interfere with Rader's employment and is non-actionable. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110–11 (9th Cir. 2000).

Moreover, Rader admits the alleged flirting and friendly contact between her supervisor and another female employee was neither sexual nor sufficiently severe or pervasive to constitute a hostile work environment. *See Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007).

2. While Rader made out a prima facie case of religious discrimination, Defendant demonstrated a valid reason for terminating her, and she fails to show this reason was pretextual. We also note that her request to observe Yom Kippur was granted according to normal procedure. Rader also alleges that she heard her

direct supervisor use the word "kike" with respect to others on four or five occasions and heard the supervisor's assistant use the word once with respect to her. While undoubtedly offensive to Rader, "'stray' remarks are insufficient to establish discrimination," *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990), especially when the remarks are "not tied directly to [the employee's] layoff,"[1] *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996). Lastly, Rader presents no admissible evidence supporting her allegation that another Jewish employee was fired. Instead, she admits this allegation is based only on office gossip relayed to her by other employees. *See* Fed. R. Civ. P. 56(c)(4).

Based on the foregoing record, we conclude that, at best, Rader's evidence raised only a "weak" issue of fact and the record contains other, "abundant and uncontroverted independent evidence that no discrimination had occurred," thus, judgment as a matter of law for Defendant was appropriate. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

---

[1] Rader also describes an incident where a Department of Homeland Security employee dressed mockingly as an Orothodox rabbi. Again, while offensive, Rader presents no evidence linking this incident to her termination. *DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 879 F.2d 459, 467–68 (9th Cir. 1989) (affirming summary judgment for employer where plaintiff failed to demonstrate nexus between discriminatory remark and plaintiff's termination).

3. Even crediting Rader's reported disabilities and the fact that she was otherwise qualified to do her job, Rader does not allege facts giving rise to an inference of disability discrimination. *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007).

4. Although Rader was fifty-eight and she performed her job satisfactorily, she has not "show[n] through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Nidds*, 113 F.3d at 917.

**AFFIRMED.**

4

*Rader v. Napolitano*, No. 11-56492

GOULD, Circuit Judge, concurring in part and dissenting in part:

I concur in the memorandum disposition insofar as it rejects the claimed disability discrimination and claimed age discrimination in its paragraphs 3 and 4. But I respectfully dissent from the majority's conclusions that the claims of sexual harassment and religious discrimination warranted dismissal by summary judgment.

As to sexual harassment, the majority states that Rader presents no evidence in support of a quid pro quo theory that she or anyone else was ever asked to provide sexual favors. However, in her declaration, Rader stated that her direct supervisor said, "You should have f***ed me," as he escorted her to get her termination letter. The majority recognizes that Rader said that this statement was made, but dismisses it offhand. Of course this more-than-curious comment that Rader says her supervisor made was uttered after the agency's decision to terminate Rader, but still the comment itself, made in the process of walking to get a termination letter, is explicit enough to permit a rational jury to conclude that Rader would not have been terminated or that her supervisor could have avoided or altered the adverse employment action if she had performed or expressed a willingness to perform sexual favors. *See Davis v. Team Elec. Co.*, 520 F.3d 1080,

1

1092 & n.7 (9th Cir. 2008); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54 (1998).  To my thinking this is not an "ambivalent" stray remark or a mere offensive utterance that can be blinked away.  *See Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038–39 (9th Cir. 2005); *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996).  Instead, it establishes a "verbal nexus" between work and sexual requests and is so offensive to the dignity of women working in a public office that it alone shows pretext.  *See Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1173–75 (9th Cir. 2003) (citing *Nichols v. Frank*, 42 F.3d 503, 512–13 (9th Cir. 1994), *abrogated on other grounds by Burlington Indus., Inc.*, 524 U.S. 724 *and Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)); *see also Swenson v. Potter*, 271 F.3d 1184, 1191 n.5 (9th Cir. 2001).  The timing and substance of the remark, attested to by Rader, connect it to Rader's termination in a more-than-speculative manner.  It is true that the only evidence of this remark comes from claimant Rader herself, and the supervisor denies uttering the offensive words, but we have never had Ninth Circuit precedent saying that a sex discrimination claimant's personal testimony about what she heard or saw is not admissible to create a genuine issue of material fact.  *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 887 & n.1, 891 (9th Cir. 2004).  So the testimony must be believed at this juncture, and if believed, in my view it

precludes summary judgment on the sexual-harassment claim.

With regard to the religious-discrimination claim, again I think there are genuine fact issues.  The majority downplays evidence presented in support of Rader's allegation that religious epithets were being used in the office, classifying the repeated use of the word "kike" as stray remarks.  But the word "kike," certainly offensive to Jews, has no place in any modern office, much less in a department of the U.S. government.  *See Dominguez-Curry*, 424 F.3d at 1038 ("Where a decisionmaker makes a discriminatory remark against a member of the plaintiff's class, a reasonable factfinder may conclude that discriminatory animus played a role in the challenged decision.").  Terms like "kike," used to describe religious or ethnic minorities, are relics of a bygone age.[1]  And their repeated use, especially when made in reference to a specific employee, can establish a genuine issue of material fact with respect to pretext.  *See McGinest v. GTE Serv. Corp.*,

---

[1] There are many theories about the origin of this derogatory reference.  For example, it has been described as emerging from Ellis Island where illiterate Jewish immigrants refused to sign entry forms with the customary "X" because they associated it with a Christian cross and instead signed with a circle, known as a *kikel* in Yiddish.  Leo Rosten, *The New Joys of Yiddish* 177 (2001).  Another theory suggests that the term derives from the Latin word *caeca* meaning blind, which was a common Christian defamation of Jewish persons referring to Jewish blindness to the so-called true faith.  Robert Michael & Philip Rosen, *Dictionary of Antisemitism: From the Earliest Times to the Present* 261 (2007).  But regardless of its origins, the term's use has no place in a modern American office.

360 F.3d 1103, 1115–16, 1121–24 (9th Cir. 2004). This is especially true when an employee suffers an adverse employment action shortly after seeking permission to participate in religious observance; Rader was terminated shortly after her request to take off Yom Kippur and before the holiday even occurred. The very close temporal proximity between her request, even though it appeared to be granted, and the repeated use of "kike" in the office is enough to establish pretext. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Again, except from claimant Rader, there is no evidence of use of the word "kike" around the office. And some others, including Rader's supervisor, declared they had never used, witnessed, or experienced inappropriate discrimination in the office. But again precedent does not establish that Rader's story is not to be credited for purposes of opposing summary judgment. *See Porter*, 419 F.3d at 891. So taking her version of events as true, we see instances of five or six usages of "kike" in Rader's presence as well as someone working at the Department of Homeland Security appearing for an open house dressed mockingly as an Orthodox rabbi. It should be obvious that the use of a racial or ethnic slur in the presence of a minority employee will be harmful to that person, whether the reference is directed at them or at another person of their race or ethnicity.

4

Whether these derogatory actions and references coupled with Rader's termination following closely on the heels of her request for time off for religious observance are sufficient to show pretext by rebutting the significant evidence that the government had grounds to terminate Rader is a close question. But I believe they are enough to let the matter go to a jury. *See McGinest*, 360 F.3d at 1121–24.

For these reasons I respectfully dissent, believing that there are genuine issues of material fact that preclude summary judgment on sexual harassment and religious discrimination.